DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

NOVEMBER TERM, 1891.

---

JOHN H. DOTY, PLAINTIFF IN ERROR, v. ASHER TELLER
ET AL., DEFENDANTS IN ERROR.

A devise in these words: "After the decease of my wife, the said Abigal
Wade, I give and devise unto Daniel Wade Teller, the son of Samuel
and Fanny Teller, all my lands, tenements and real estate whatsoever
and wheresoever, to him and to his heirs entail the same forever "—
*Held* to create an estate tail under the statute 13 *Edw. I.*, which, by
the act of June 13th, 1820 (*Pamph. L.*, p. 178; *Rev.*, p. 299, ¾ 11),
vested an estate for life in Daniel Wade Teller and the fee simple in
his children.

---

On error to Union Circuit Court.

Daniel Wade died on the 9th of September, 1821, seized
of the land in Union county for which ejectment is here
brought. On the 3d of November, 1818, while seized of
that land, he made his last will, which was duly admitted to
probate in December, 1821, and, in the operative parts thereof,
is in the following language:

"*First.* It is my will, and I do order that all my just debts and funeral expenses be fully paid and satisfied as soon as conveniently can be after my decease.

"*Item.* I give and bequeath unto my beloved wife, Abigal Wade, the use of all my estate, both real and personal, during her natural life (except so much of my personal estate as may be wanted to pay my just debts and funeral expenses). And, further, I do hereby authorize and empower my said wife Abigal, that, if in the course of Divine Providence, her daughter, Fanny Teller, now the wife of Samuel Teller, should be reduced to indigent circumstances, to relieve her necessities in that way which shall be most expedient and least injurious to my estate.

"*Item.* After the decease of my wife, the said Abigal Wade, I give and devise unto Daniel Wade Teller, the son of Samuel and Fanny Teller, all my lands, tenements and real estate whatsoever and wheresoever to him and to his heirs entail the same forever.

"*Lastly.* I appoint my said wife, Abigal Wade, executrix and my trust friend, Luke Tucker, executor of this my last will and testament."

The testator's wife, Abigal Wade, died on the 12th of December, 1825. Daniel Wade Teller was her grandson, not of the blood of the testator. Upon the death of Abigal Wade, while he was yet a minor, Daniel Wade Teller entered into possession of the lands devised to him, and, in March, 1831, when of full age, executed a deed of the *locus in quo* to one John Smith, which purported to convey the property in fee, and contained covenants of seizin and warranty. Smith went into possession under his deed, and by like instrument, in November, 1846, conveyed the property to Elias Crane, who, after taking possession by similar deed dated in January, 1853, conveyed the property to Samuel H. Doty, the father of the plaintiff in error, who died intestate on the 21st of March, 1871, leaving several heirs-at-law, of whom the plaintiff in error is one. The possession of the plaintiff in

error is admitted to be the possession of all the heirs of Samuel H. Doty.

Daniel Wade Teller died on the 3d of March, 1889, leaving his children, Asher Teller, Phebe J. Decker and Lewis Teller, the plaintiffs below and defendants in error, and two children of a deceased daughter, his only heirs-at-law. At the Circuit Court the defendant was found guilty as to the undivided three-fourths of the premises sued for.

For the plaintiff in error, *Gilbert Collins.*

For the defendants in error, *John T. Dunn.*

The opinion of the court was delivered by

THE CHANCELLOR. A single question is presented by the error assigned in this case. It is, whether Daniel Wade Teller took a fee or merely an estate for life under the will of Daniel Wade. That will devises the land in question, after the death of the testator's wife, " to him and to his heirs entail the same forever." Its construction must depend upon the force or effect which is to be accorded to the words " entail the same." Without those words the devisees would clearly take the lands devised in fee. Their natural import, in the connection in which they are used, is to condition or qualify the fee that is given. The effect designed by them is expressed by the word " entail," the well recognized import of which is to restrain the fee to heirs of the body of the donee to the exclusion of collateral heirs, and to imply a condition that if the donee dies without lineal heirs the land shall revert to the donor. After the enactment of the statute of Westminster the Second (13 *Edw. I.*), commonly called *de donis conditionalibus,* the conditional fee was by judicial construction resolved into a particular estate known as a fee-tail. *Den* v. *Spachius,* 1 *Harr.* 172. '

Lands held by that estate were commonly said to be entailed.

As the word " heirs " is necessary to the creation of the fee simple by deed, so the additional word " body," or some other

word of procreation, was necessary to create a fee-tail by such an instrument. But in wills, where the cardinal rule of construction is that the testator's manifest intention shall prevail over all forms of expression, these correct and technical words have never been considered essential. Any expressions in the will denoting an intention to give the devisee an estate of inheritance descendible to his, or some of his, lineal, but not collateral, heirs, have always been regarded as a sufficient devise of a fee-tail. 3 *Jarm. Wills* (*R. & T. ed.*) 89; 1 *Washb. Real Prop.* 109; 2 *Bl. Com.* 115; *Den* v. *Fogg, Pen.* 819; *Somers* v. *Pierson,* 1 *Harr.* 181; *Den* v. *Cox,* 4 *Halst.* 10; *Den* v. *Fox,* 5 *Id.* 39; *Weart* v. *Cruser,* 20 *Vroom* 475.

In the devise in question the purpose of the testator is very plainly manifested. He meant to create an estate tail. Being at a loss for the correct and technical language to express it, instead of saying "to Teller and the heirs of his body forever," he said, "to Teller and his heirs, entail the same, forever," specifying the result he wished to reach as plainly as though in giving a fee simple he had so said, in place of using the word "heirs." It is not perceived how any other conclusion as to his intention can be reached without rejecting the words "entail the same" as meaningless surplusage. Nothing in the context of the will justifies such a rejection. All other expressions in the instrument are plainly pertinent to the subject matter dealt with and necessary to signify the testamentary purpose, exhibiting a capacity in the testator to clearly and concisely express his intentions.

When the will was drawn estates tail existed in this state, recognized and regulated by the statute of August 26th, 1784 (*Pat. L., p.* 53), explained by the act of March 23d, 1786. *Pat. L., p.* 78. They could be created by devise, to exist during the life of the devisee and to descend at his death to his heirs according to the rules of descent at the common law. But the instant the first descent was cast, that instant the estate was enlarged into a fee simple. *Den* v. *Fogg, Pen.* 819; *Den* v. *Fox,* 5 *Halst.* 40; *Den* v. *Spachius,* 1 *Harr.* 172; *Den* v. *Baldwin,* 1 *Zab.* 395.

By statute of the 13th of June, 1820 (*Pamph. L., p.* 178), estates tail were abolished, and it was provided that a devise which, under the statute 13 *Edw. I.,* would be held to create an estate tail, should vest an estate for life only in the devisee and a fee simple in his children, equally, as tenants in common, the children of a deceased child taking their parent's interest. *Rev., p.* 299, § 11. At the death of Daniel Wade, after the latter statute went into effect, the will in question first spake, and hence Daniel Wade Teller took only an estate for life. At his death the defendants in error became entitled to recover possession of the *locus in quo.*

We find no error, and therefore affirm the judgment below.

*For affirmance*—THE CHANCELLOR, DEPUE, DIXON, MAGIE, REED, BOGERT, BROWN, CLEMENT, KRUEGER, SMITH. 10.

*For reversal*—None.