HENRY C. PITNEY, JOHN R. EMERY, ALFRED REED,
FREDERIC W. STEVENS, MARTIN P. GREY AND
EUGENE STEVENSON, VICE-CHANCELLORS.

R. HENRY HOLME et al.

*v.*

LOUISA J. SHINN.

[Filed May 22d, 1901.]

1. Lands were devised to Israel Smith and the heirs of his body by a will executed in 1818. Testatrix died in 1825, and the operative effect of her will was governed by the provisions of the act of June 18th, 1820. Upon her death, Israel took a vested estate therein for life; when he after-

(1)

wards married, his wife took an inchoate estate of dower therein; as children were born, each became seized of a vested estate in fee expectant on Israel's death, and opening to admit a like vested estate in subsequently born children.

2. Israel and Lucy, his wife, and their only surviving child, James, conveyed their respective interests in the lands to one Van Meter, who reconveyed the same to Israel, Lucy and James as joint tenants. Van Meter's conveyance on its face passed only a life estate because the word "heirs" was omitted. By a stipulation of parties, it is admitted that the deed was intended to pass a fee-simple estate, and the omission of words of inheritance was by mistake of the parties.—*Held*, that the deed may be reformed to effectuate the admitted intent of the parties thereto, either under the general prayer for relief, or under an amendment of the bill by a specific prayer.

3. James survived his father and mother, and died seized of the lands in question, unmarried and intestate. Those nearest to James in consanguinity were first cousins, who were not of the blood of Ann Smith, and they are complainants in the bill. The next in consanguinity was defendant, who was of a more remote degree than complainants, but was of the blood of Ann Smith. Upon bill to quiet title—*Held*, that James took by purchase from Van Meter and that his heirs-at-law took the lands, although not of the blood of Ann Smith.

Argued at February Term, 1901, and briefs afterward submitted, the last on May 16th, 1901.

This is a bill to quiet title to lands.

Complainants are first cousins of one James D. Smith. They are in possession of the lands in question, and claim them as the heirs-at-law of the said James D. Smith, who died in possession thereof, seized, as they claim, of a descendible title therein.

The defendant is a cousin of the said James D. Smith, but of one degree more remote than the complainants. Her claim is that although of more remote relationship, her title to the lands is to be preferred to that claimed by the complainants, because, as she maintains, the title of James D. Smith was derived from his great-grandmother, Ann Smith, and that complainants are not of the blood of the said Ann Smith, while she, the defendant, is of her blood.

The respective claims of the parties being presented by proper pleadings, an order for a feigned issue was made in the cause. The transcript has been returned, certified, with a special verdict, from which the following facts appear:

Ann Smith died in December, 1825, seized of the lands in question. She left a will, dated April 17th, 1818. By the construction given to that will by the supreme court in 1830 (*Den* v. *Hance, 6 Halst. 244*), the lands in question passed by a devise in the following words:

"I give and devise said plantation and tract of woodland to the said Israel Smith and to the heirs of his body, and for want of such heirs, to the aforesaid Joshua Smith, Powell Smith and Mary Smith, wife of Merriman Smith."

Israel Smith was the grandson of Ann Smith, and was at her death an infant and unmarried. Afterward he intermarried with Lucy Ann Dennis, his cousin, and had five children, all of whom died in infancy except one, named James D. Smith, who was born October 20th, 1846. Three children of the said Israel and Lucy Smith had been born previous to the birth of James, but were all then dead. One child was born afterward, and died in infancy.

James D. Smith survived his father and mother and died intestate and without issue, October 20th, 1889. It appears from the special verdict that the complainants include all of the first cousins of James D. Smith, deceased, except one, and he is represented by persons to whom he had assigned his interest in the lands in question. Although they are nearest in consanguinity to James D. Smith, deceased, complainants are not of the blood of Ann Smith. It also appears from the special verdict that the defendant is a second cousin of James D. Smith, and is of the blood of Ann Smith.

The special verdict shows that James D. Smith, by a deed bearing date October 21st, 1867, conveyed to one Edward Van Meter all his estate in the lands in question, and that the said Israel Smith and Lucy A. Smith, his wife, by a deed bearing date October 22d, 1867, conveyed all their estate in the lands in question to the said Van Meter.

It further appears that the said Van Meter and his wife, by deed bearing date October 23d, 1867, conveyed the lands in question to Israel Smith, Lucy A. Smith and James D. Smith, *habendum*, as joint tenants and not as tenants in common. Since

this deed did not contain any words of inheritance in its grant (the word "heirs" being omitted), it operated only to convey a life estate, terminable at the death of the last survivor of the three grantees.

After Israel Smith and his wife, and James D. Smith had died, Caroline Van Meter, the widow of the said Edward Van Meter, to whom said Edward Van Meter had devised all his estate by his last will, conveyed an undivided seven-eighths of the lands in question to the seven complainants related to James D. Smith, and by a separate deed conveyed one undivided eighth of the lands in question to the assignees of the remaining first cousin of James D. Smith, who are the other complainants.

*Mr. Clement H. Sinnickson,* for the complainants.

*Mr. Norman Grey,* for the defendant.

MAGIE, CHANCELLOR.

For reasons counsel will understand, I deem it my duty to state the conclusions I have reached in this case, without the delay which would be required to enable me to prepare an elaborate opinion.

When Ann Smith executed her will in 1818, the law of this state in respect to such estates as were estates tail at common law, had been declared by the provisions of the act of August 26th, 1784 (*Pat. L. of 1784 p. 53*), as explained by the act of March 23d, 1786. *Pat. L. of 1786 p. 78.* When Ann Smith died in 1827, the act above cited had been repealed by section 3 of "An act further regulating the descent of real estates," passed June 18th, 1820. *R. L. of 1820 p. 774.* By section 2 of the act last mentioned, regulations as to such estates were enacted. They were in force at the death of Ann Smith. The section in question is now the eleventh section of our present statute of descents. *Gen. Stat. p. 1195.*

It has been suggested in the argument that there might be a question whether the nature of the estate transmitted by the will of Ann Smih was to be discovered by the act which was

in force when she executed that will, or by that in force when she died and her will took effect.

This question has, however, been disposed of by the decision of the court of errors in *Doty* v. *Teller, 25 Vr. 163,* upon a will made before the act of 1820, where the testator died after the passage of that act. It was distinctly held that the provisions of the act in force at the testator's death governed the construction and operative effect of the will. It was also thereby held that a devise, such as that with which we are now dealing, vested an estate for life only in the devisee named, and a fee-simple in his children.

It results, therefore, that, upon the death of Ann Smith; Israel took a vested estate for his life. By the express terms of the act of 1820, his wife, Lucy, acquired, on her marriage, an inchoate estate of dower therein. As children were born to Israel, they successively took a vested estate in fee-simple in the lands in question, expectant on Israel's death, and opening to admit a like vested estate in subsequently born children.

I deem it unnecessary in this cause to determine how the estate which each of such children became vested with at birth, went in case of its death intestate, before the death of Israel, for when the conveyance to Van Meter was made in 1867 it cannot be doubted that the whole estate in the lands in question passed thereby to Van Meter. Israel and his wife passed by their conveyance his life estate and her inchoate dower and any interest which Israel may have acquired by the death of any of his children prior to the birth of James D. Smith. James passed by his deed whatever interest he acquired by the will of Ann Smith, or by the death of any of the other children of Israel Smith. By the conveyances to Van Meter, therefore, the whole legal title to the lands in question became vested in him.

The conveyances to Van Meter are expressly declared therein to have been made upon considerations which are valuable and not merely nominal. Unless the case discloses that they were made without any consideration paid or received therefor, and were intended by the parties to vest the title in Van Meter not for his own benefit, but for the benefit of his grantors, they must be deemed to have passed to him complete title, which

passed by his devise and has been conveyed to complainants by his devisee. Upon this view defendant has no estate or interest in the lands.

It is suggested that from the proximity of the dates of the conveyances, their simultaneous execution, acknowledgment and delivery, and the fact that neither the acknowledging officer nor the widow of Van Meter (who are the only survivors of those present at the delivery) were aware of any consideration having been passed between the parties, it should be inferred that they were made without consideration and to convey to Van Meter a title for the benefit of the grantors, and that since he reconveyed to them only a life estate, the reversion that remained in him was subject to a trust for the benefit of the survivor, who was James. If so, the conveyance by Van Meter's devisee to complainants (who were not purchasers for value) passed the title subject to such trust. Upon this theory, the equitable estate of James, who died intestate, is, in equity, to be deemed to have descended as a similar estate at law would do. *Martling* v. *Martling, 10 Dick. Ch. Rep. 771*. But it would be open to serious question whether that estate was not the very estate which came to him by devise from his great-grandmother, Ann Smith, and from inheriting which the heirs of James, not of her blood, are by our statute excluded. *Gen. Stat. p. 1196 § 14*. Such was the view of the courts of England in applying the common law rule of which our statute is substantially a copy, as may be seen in the reference below made. Mr. Hargrave puts it thus:

"If an heir makes a feoffment limiting the use to him or his heirs, or if there was no declaration of uses and the feoffment was not on such a consideration as to raise a use in feoffee, and consequently the use resulted to the feofor, in either case he is in by his ancient use and not by purchase."

But the case actually before us, by the verdict upon the proofs and admissions of the parties, is different. The devisee of Van Meter, who might claim that the reversion which remained in Van Meter after the termination of the life estate created by his conveyance, was his own estate unburdened by any trust in her conveyance to the complainants, not only admits that the conveyances to him were without actual consideration, but asserts

that his conveyance to Israel, Lucy and James was intended to convey an estate in fee to the grantees as joint tenants, and that the word "heirs" was omitted therefrom by mere mistake. Her conveyances to complainants were made to cure that mistake.

The solicitors of the complainants and defendant, by a written stipulation, expressly admit that the omission of the word "heirs" from the conveyance of Van Meter was by mistake, and that the conveyance is to be read and considered here as if that word were inserted where necessary, and the deed was thereby so corrected as to pass to the grantees therein an estate in fee in joint tenancy.

Upon this evidence and concession there might be a decree for a reformation of the deed, and although there is no specific prayer for such relief in this case, I think such a prayer may be introduced by amendment, or the relief granted under the general prayer. *Coe* v. *New Jersey Midland Railroad Co., 4 Stew. Eq. 105.*

Assuming the conveyance to be so reformed, it is obvious that the title which James acquired thereby, upon his surviving his father and mother, was a fee, which was an inheritable estate, and which, upon his death, descended to his heirs-at-law.

Was the inheritance (to use the word of our statute) one which came to him by the devise of Ann Smith? If so, complainants, who are not of her blood, are excluded from inheriting.

Was the inheritance one which came to James from Van Meter, being transmitted to him by the terms of the conveyance as reformed? If so, complainants, who are next in consanguinity to him, although not of the blood of Ann Smith, are not excluded from inheriting, and defendant has no estate or inheritance in the lands.

The enactment of our statute pursuing the precept and policy of the common law, justifies in applying to cases under it the doctrines of the ancient expounders of the common law. Lord Coke says:

"If a man be seized of lands as heir on the part of his mother and maketh a feofment in fee and taketh back an estate to him and to his heires, this is a new purchase and if he dyeth without issue the heires on the part of the father shall first inherit." *Co. Litt. of Fee Simple, c. 1 § 4.*

And Mr. Hargrave notes that this is to be understood to speak of two distinct conveyances in fee; the first passing the use as well as the possession to the feoffee and so completely divesting the feoffor of all interest in the land, and the second regranting the estate to him. See *Viner's Abr., tit.* *"Heir W;" Greenl. Cruise, tit. 39 ch. 3 § 33; Bac. Abr., tit.* *"Descent E;" Price* v. *Langford, 1 Salk. 337; Harman* v. *Morgan, 7 T. R. 104.*

This doctrine and its application to the case in hand is not open to the criticism of the counsel of the defendant. It is true that the conveyance of James to Van Meter was without consideration, but it was made for the purpose of passing the title to Van Meter in fee, and it was good for that purpose though voluntary, for it was part of their joint purpose that Van Meter should reconvey such title as he acquired to James. When he made such conveyance, James' title came from him by conveyance. No one was entitled to question what James did with the lands. He might convey them or devise them. His prospective or presumptive heirs-at-law, though of the blood of Ann Smith, had no interest in the lands, and he might at will transmute by proper conveyance the estate he had received by her devise into an estate by purchase, inheritable by his heirs generally.

It results that complainants are entitled to a decree.