EMMIE LEMLIE BROWN v. GEORGE E. WILSON.

(Filed 28 November, 1917.)

1. **Guardian and Ward—Funds in Hand—Personalty—Action—Parties.**

When personal property or money in hand is the subject of the action, an heir at law of a deceased ward may not maintain an action against the guardian for a settlement in his own right, for such may only be done by the personal representative of the deceased ward.

2. **Guardian and Ward—Settlement—Action—Pleadings—Demurrer.**

Where the complaint fails to allege that the proceeds of sale of certain of the ward's land came into the hands of the guardian, a demurrer thereto in an action against the guardian for a settlement thereof is good.

3. **Equity — Conversion — Reconversion—Guardian and Ward—Pleadings—Demurrer.**

Where the ward's land are sold by order of court under the doctrine of equitable conversion, the proceeds are to be regarded as personalty, and the doctrine of reconversion only can apply to infants and (formerly) to married women; and where an heir at law of the deceased ward brings action against the guardian for settlement, the allegation that the qualified guardian in 1856 affords no evidence that the ward was a minor in 1861, when the lands were sold, and without further averment, a demurrer is good.

APPEAL by plaintiff from *Cline, J.,* at February Term, 1917, of MECK-LENBURG.

This action was brought by the plaintiff in her own right against the executor of Joseph H. Wilson for a settlement of the guardianship of her mother, Ella R. Carson, and her mother's sister, Richardine Carson, both long since dead.

The complaint alleges that Joseph H. Wilson qualified as guardian of Ella R. Carson and sister, Richardine, at October Term, 1856, and that he failed to file any final account as to Ella R. and filed only a partial final account as guardian of her sister. It is also alleged that at November Term, 1856, in an action in which the said wards were plaintiffs and John A. Young and others were defendants, it was ordered by the court that a one-third interest of said wards in certain real prop-erty derived from their father R. C. Carson be sold to one Young for $8,000, and that the said Joseph H. Wilson was appointed commissioner to make said sale, and that the record shows that his deed conveying said interest was dated in 1863 and registered in 1867, the consideration named therein being $8,000. It is also alleged that said Wilson, as guardian of Richardine, partially settled with her in 1877 by paying to her $3,000, the proceeds of certain insurance money collected on policies on her father's life, and further that said J. H. Wilson never filed any inventory or final account of his guardianship of herself or her sister. It is alleged upon information and belief that the said Joseph H. Wilson, as guardian, was indebted to said Ella R. Carson in the sum of $3,000, a part of the distributive share of her father's estate.

Section 14 of the complaint alleges that the plaintiff, as the sole heir of Ella R. Carson and Richardine, is entitled to the sum of $8,000, with interest from 1 January, 1861, "being the proceeds derived from the sale of said interest in real estate as hereinbefore set forth and still in the hands of the said guardian at the time of his death."

The prayer for judgment is first for the sum of $3,000 as Ella R.'s part of the distributive share of her father's estate, and second for $8,000, with interest from January, 1861, as the proceeds of the sale of the wards' interest in the property conveyed to John A. Young. The complaint does not allege that the proceeds of said sale ever came into the hands of the guardian.

The defendant demurred:

(1) That there was a defect of parties plaintiff, in that the personal representative of Ella R. Carson and the personal representative of Richardine Carson, who are the only parties who can maintain this action for an account and payment of any distributive share of R. C. Carson, deceased, which may have been in the hands of the defendant's testator at the time of his death are not parties.

(2) That the plaintiff in her own right cannot maintain this action.

(3) For that there is a misjoinder of causes of action, in that the plaintiff has attempted to unite in her complaint a cause of action which could be instituted only by the personal representative of Ella R. Carson and the cause of action which should be brought only by the personal representative of Richardine Carson. The Court stated to plaintiff's counsel that if he would so amend his complaint as to specifically allege that the $8,000 proceeds of the sale of real estate to John A. Young ever came into the hands of the said J. H. Wilson, as guardian, he would overrule the demurrer. Plaintiff's counsel stated in open court, as appears from the judgment, that she was unable to amend her complaint. The court thereupon sustained the demurrer and dismissed the action. The plaintiff excepted and appealed.

*T. W. Alexander and Hugh W. Harris for plaintiff.*
*Osborne, Cocke & Robinson and Cansler & Cansler for defendant.*

CLARK, C. J. An action for any funds in the hands of the guardian of Ella R. Carson and of her sister Richardine which said guardian is alleged to have received as a distributive share from the estate of the father of said wards can be maintained only by the personal representatives of said wards. *Goodman v. Goodman,* 72 N. C., 508; *Merrill v. Merrill,* 92 N. C., 665.

The complaint does not allege that the proceeds of the sale of the real estate belonging to said ward came into the hands of said guardian, and the plaintiff having expressed her inability to amend the complaint to so aver, the demurrer was properly sustained.

As to the second ground of demurrer, the allegation in the complaint is that the realty was sold by J. H. Wilson, commissioner. The complaint does not aver and the plaintiff refused the leave given by the court to amend the complaint to aver that the proceeds of the realty came into the hands of Wilson as guardian. The plaintiff cannot maintain this action, for it is not averred in the complaint that at the time of the sale of the realty in 1861 the mother and aunt of the plaintiff were then minors. If they were of full age when the sale was made in 1861, such sale worked a complete conversion of the proceeds of the sale from realty into personalty, and consequently such proceeds could be recovered only by the personal representatives of the plaintiff's mother and heir.

In *Benbow v. Moore,* 114 N. C., 270, *Shepherd, C. J.,* says: "It was at an early period laid down by Sir Thomas Sewell, M. R., in the leading case of *Fletcher v. Ashburner,* 1 Bro. C. C., 497, 'that money directed to be employed in the purchase of land and land directed to be sold and

turned into money are to be considered as that species of property into which they are directed to be converted, and this in whatever manner the direction is given, whether by will, by way of contract, marriage articles, settlement, or otherwise, and whether the money is actually deposited or only covenanted to be paid, whether the land is actually conveyed or only agreed to be conveyed. The owner of the fund or the contracting parties may make land money, or money land.' This principle is so universally accepted that it is needless to cite additional authority in its support, and it is equally well settled 'that every person claiming property under an instrument directing its conversion must take it in the character which that instrument has impressed upon it, and its subsequent devolution and disposition will be governed by the rules applicable to that species of property.'" 1 Williams Exrs., 551; *Proctor v. Ferebee,* 36 N. C., 143; *Smith v. McCrary,* 38 N. C., 204; *Brothers v. Cartwright,* 55 N. C., 113; *Conly v. Kincaid,* 60 N. C., 594; Adams Eq., 136.

The doctrine of equitable reconversion applies only to the proceeds of the sale of real estate belonging to infants and married women which, under the statute then and now in force, retained the character of realty, and not to the proceeds of the sale of real estate belonging to persons of full age. The fact that J. H. Wilson qualified as guardian in 1856 is no allegation that they were minors still in 1861.

In fact, the land was turned into money, and was, therefore, the subject of an action by the personal representative. The doctrine of "equitable reconversion" which 2 Mordecai Law Lectures (2 Ed.), 1370, styles the "child of the Lord Chancellor's imagination" has no room for application, for "reconversion is the result of the election expressly made or inferred by a court of equity, and is the notional or imaginary process by which a prior constructive conversion is annulled and the constructively converted property is restored, in contemplation of a court of equity to its original actual quality." *Ib.* Here there was nothing to change the money received from the sale of the land, even imaginatively, back into land.

The judgments sustaining the demurrer is
Affirmed.