FANNIE M. PEEL, E. S. PEEL, MARY A. DANIEL, H. D. DANIEL, N. R. DANIEL, N. T. DANIEL, BELL HARDISON, J. M. HARDISON, HELEN HARDISON, W. G. HARDISON, FANNIE GETSINGER, P. E. GETSINGER, MYRTLE I. HUGH, AND JAS. R. DANIEL, BY THEIR GUARDIAN, HATTIE DANIEL, AND HATTIE DANIEL, v. ALTON B. COREY AND A. R. COREY.

(Filed 26 September, 1928.)

1. **Wills—Rights and Liabilities of Devisees and Legatees—Election.**

Where a devise of land is clearly stated in the will as unconditional, it may not be otherwise shown by parol that the devise was in lieu of other lands owned by the devisee, and thus put him to his election, or stop him from claiming under the will by his being present at the time the will was probated, and not making objection.

2. **Deeds and Conveyances—Requisites and Validity—Form and Contents —Notarial Seals.**

Where a deed in the chain of title of the plaintiff bears the certificate of the clerk of the court of the county of its registration that the instrument has been properly proved as appears from the foregoing seals and certificates, the presumption is against the defendant's contention to the contrary, and the validity of the deed will be upheld when it has been duly acknowledged before a notary public in due form, but not attested by his notarial seal, C. S., 3179, 3297, and, *Held,* no prejudicial error when the parties plaintiffs to the action are grantors and grantees in the deed.

3. **Descent and Distribution—Nature in General—Heirs Designated in Devise.**

A grandson of the devisor of lands does not take lands by descent from him when his father is living at the time of his grandfather's death, even though he takes the same lands and interest under the devise that he would have taken under the descent had his father not been living, and he acquires a new estate by purchase, descendible to his heirs at law under the cannons of descent. C. S., 1654, Rules 4, 5, 6.

APPEAL by defendants from *Clayton Moore, Special Judge,* at January Special Term, 1928, of MARTIN. No error.

This is an action involving the title to about 150 acres of land, on the west side of the Jamesville and Washington Road in Martin County, N. C. It was alleged in the complaint that the plaintiff, Fannie M.

Peel, was the owner of a one-third undivided interest, the other plaintiffs are the owners of a one-third undivided interest, and the defendant, Alton B. Corey, is the owner of a one-third undivided interest. The defendants plead sole seizin, adverse possession for the statutory period and estoppel. The action was instituted to restrain defendants from cutting and removing timber from the land. It was tried on the theory as an action for partition.

Jesse Hardison owned about 1,300 acres of land on both sides of the Jamesville and Washington Road in Martin County. On 5 September, 1858, he executed a will leaving this real property (after the life estate to his wife) to his two grandsons, David R. and Jesse H. Hardison. After the death of Jesse Hardison the will was duly probated in 1859. David R. and Jesse H. Hardison went into possession of the land. The grandson Jesse H. Hardison never married and died intestate. He left surviving him David R. Hardison, the owner of one-half interest in the land and as his heirs at law to the other half (1) David R. Hardison and his sisters, (2) Mary Emily Hardison, (3) Sallie Ann Hardison, (4) Hannah Daniel and a half-brother, (5) John Edward Cook. Their mother married a Cook and had one child, John Edward Cook, and then married James Hardison, son of Jesse Hardison, and had the children above mentioned. James Hardison was the father of David R. and Jesse H. Hardison and was living at the death of his father, Jesse Hardison, who made the will and left the land to his two grandsons, David R. and Jesse H. Hardison.

It appears that Sallie Ann Hardison died intestate. John Edward Cook died intestate leaving as his heirs at law John S., T. C., and H. D. Cook. Then David R. Hardison died intestate some six or seven years ago, leaving (1) Mary Emily Hardison, (2) Hannah Daniel, who married W. H. Daniel, and (3) the children of John Edward Cook. After David R. Hardison's death, the two surviving sisters lived on the place. Mary Emily Hardison died leaving a will dated 26 June, 1923, probated 3 September, 1923. In item 2 of the will she devised to Alton B. Corey, defendant, "All of the land on the west side of the Jamesville and Washington Road, it being the residence on which I now live, including all of the buildings." In item 3 she says, "I leave the remainder of my land to be equally divided between all of the children of W. H. and Hannah Daniel and John Edward Cook." At that time she owned the interest in the land which she inherited from her brothers and sister. Hannah Daniel thereafter died, leaving a will, dated 5 February, 1925, probated 1 February, 1926. In it she gives to her seven living children and the child of her deceased son, James A. Daniel, "All my interest in David R. Hardison and Jesse Hardison tracts of land." On 24 December, 1925, John S., T. C., and H. D. Cook and their wives (the heirs of

John Edward Cook) conveyed all of their interest in the entire 1,300 acres to Noah T. Daniel and others, and on 25 March, 1927, Noah T. Daniel and others conveyed to Fannie M. Peel, the plaintiff, an undivided one-third interest in the lands on the west side of old Jamesville and Washington Road, the land in controversy. On 19 May, 1927, this action was brought alleging a tenancy in common, as follows: One-third in Fannie M. Peel, one-third in Noah T. Daniel and others, and one-third in Alton B. Corey in the land on the west side of the Jamesville and Washington Road.

The issue submitted to the jury and their answer thereto was as follows: "Are the plaintiffs the owners and entitled to two-thirds of the lands described in the complaint, as alleged? Answer: Yes."

The court below instructed the jury that if they believed the evidence and found the facts to be as testified to, they would answer the issue "Yes," otherwise "No." Numerous exceptions and assignments of error were made by defendant. The material ones and other necessary facts will be set forth in the opinion.

*Ward & Grimes and B. A. Critcher for plaintiff.*
*A. R. Dunning for defendants.*

CLARKSON, J. From a perusal of the record the only material propositions of law that seem to be involved: (1) Is the estoppel plead by the defendants good in law? (2) Under the facts in this action in the chain of plaintiff's title is a deed duly acknowledged before a notary public in due form, but not attested by his notarial seal, competent as evidence tending to show title? (3) Do the children of John Edward Cook, the half-brother (half blood) inherit equally with those of the whole blood?

From the record plaintiffs' contention is that the land in controversy was owned by (1) Mary Emily Hardison, (2) Hannah Daniel, (3) John Edward Cook's children as tenants in common. That Mary Emily Hardison owned a third interest and she willed all her interest in the land on the west side of the Jamesville and Washington Road to defendant, Alton B. Corey, and that on the east side (or remainder) to the children of W. H. and Hannah Daniel and John Edward Cook. Plaintiffs claim that they are the owners of the two-thirds interest through Hannah Daniel and John Edward Cook. From the language in the will of Mary Emily Hardison, we can see nothing that would estop plaintiffs from making the claim. Nor do we think the evidence of the fact that Hannah Daniel was present when the will of Mary Emily Hardison was read and executed and what she said, if competent, indicated that the devise to the children of Hannah Daniel was conditioned upon Hannah Daniel surrendering to defendant, Alton B. Corey, her (Hannah Daniel's) interest in the land on the west side of the Jamesville and

6—196

Washington Road. The testimony on the subject, if competent, indicated only that Hannah Daniel and her husband "had talked it over and that was their mind, to give him the west side of the road anyhow, if they had anything to do with it." There is no sufficient language in the will, or otherwise, to base an estoppel.

The doctrine of estoppel is at some length set forth in *Winstead v. Farmer*, 193 N. C., at p. 410. It is there said: "The doctrine of estoppel by conduct as extracted from *Pickard v. Sears*, 6 A. & E., 469, and *Freeman v. Cooke*, 2 Ex., 654, may, without attempting scientific precision, be thus stated: Where one person by his words or conduct represents a certain state of things to exist, and thereby induces—no matter whether he intended it or not—another to alter his opinion, that other is not to be prejudiced by the perfidy or fickleness of the first person." *Cook v. Sink*, 190 N. C., 620; *Meyer v. Reaves*, 193 N. C., 172; *Trust Co. v. Collins*, 194 N. C., 363.

We do not think, from the facts, the principle of election applies. The principle is thus stated in 28 R. C. L. (Wills), sec. 318: "Where a testator, after devising property owned by him to one beneficiary, assumes to devise to another property belonging to the first devisee, the devisee of the property owned by the testator if he accepts the devise with knowledge of all the facts, is precluded from asserting a claim to his own property devised to the other beneficiary. In other words a legatee claiming under a will that devises away property of which he is owner can have the benefit of his legacy only upon renouncing in favor of the devisee his right to the property devised. The beneficiary must elect between keeping his own and taking what is given by the will. . . . In order to make a case of election, it is well settled that the intention of the testator to give that which is not his own must be clear and unmistakable. It is not, however, necessary that such intention should be expressly declared, but it may be gathered from the whole and every part of the instrument."

As to the second proposition: C. S., 3179, is as follows: "Official acts by notaries public shall be attested by their notarial seals." C. S., 3297, is as follows: "When proof or acknowledgment of the execution of any instrument by any maker of such instrument, whether a married woman or other person or corporation, is had before any official authorized by law to take such proof and acknowledgment, and such official has an official seal, he shall set his official seal to his certificate. If the official before whom the instrument is proved or acknowledged has no official seal he shall certify under his hand, and his private seal shall not be essential. When the instrument is proved or acknowledged before the clerk or deputy clerk of the Superior Court of the county in which the instrument is to be registered, the official seal shall not be necessary."

From an examination of the registered deed certified to this Court, we find the clerk of the Superior Court has the following certificate: "Do hereby certify that the due execution of the foregoing instrument has been properly proved, as appears from *foregoing seals and certificates.* Therefore let the instrument with the certificates be registered." The presumption is against defendants' contention. See *Johnson v. Lumber Co.,* 147 N. C., 249; *Roberts v. Saunders,* 192 N. C., 191.

It is contended by plaintiff: "Anyway, this deed is not essential to the plaintiff's recovery, as both grantors and grantees are parties plaintiff in this action and the cause of action would exist in favor of the grantors in the deed if the deed were excluded from evidence." The record so indicates. We see no prejudicial error to defendant in the assignment of error on this aspect of the case.

As to the third proposition, we think the children of John Edward Cook, the half-brother (half blood) inherit equally with those of the whole blood. The widow Cook had one child, John Edward Cook; she married James Hardison and had five Hardison children, the two grandsons to whom Jesse Hardison willed the land, viz.: (1) David R. Hardison, and (2) Jesse H. Hardison, and also (3) Mary Emily Hardison, (4) Sallie Ann Hardison, and (5) Hannah Daniel. James Hardison was living when his father,. Jesse Hardison, died. David R. and Jesse H. Hardison were purchasers.

In *Yelverton v. Yelverton,* 192 N. C., at p. 617, *Brogden, J.,* says: "What is purchase in law? 'Purchase in law denotes the acquisition of an estate in lands by a man's own agreement or act in contradistinction to acquisition by descent from an ancestor. The popular signification of the word purchase, *i. e.,* to buy, falls far short of the comprehensive meaning given to the word by the law. If land be given to a man by deed or will, in fee or in fee tail, he is a purchaser. But there is this distinction in the case of a gift by will: If the ancestor devised his whole estate to his heir at law in the identical manner in which it would have descended to the heir if no devise had been made, the heir takes by descent and not by purchase. But he must take the same estate and in the same subject-matter to come under the rule.' Mordecai's Law Lectures, Vol. 1, 648." *Welch v. Gibson,* 193 N. C., at p. 689; *Clark v. Clark,* 194 N. C., 288. The land must be treated as a new acquisition by David R. and Jesse H. Hardison.

*Pearson, J.,* in *Osborne v. Widenhouse,* 56 N. C., at p. 239, 240, says: "Noah Furr acquired the land in controversy as devisee under the will of his grandfather, Paul Furr. At the death of the devisor, Henry Furr, the father of Noah, was living, and would have taken the land as his heir, had he died without making a will; so Noah at the death of Paul, his grandfather, was not 'his heir or one of his heirs,' and, neces-

sarily, took the land as a *purchaser* in its general sense, and not in the peculiar mode which, under the statute, is made to have the like effect as a *descent*. He took by devise, and could not have claimed as heir of his grandfather, had the latter died intestate. This is settled in *Burgwyn v. Devereux*, 1 Ire. Rep., 586, where the matter is fully elaborated, and the construction of the rule of descent is fixed. It follows that the land must be treated as a *new acquisition* by Noah Furr, and is transmitted to his uncles and aunts on the mother's side as well as those on the side of the father." See C. S., 1654, Rules 4, 5 and 6. *Paul v. Carter*, 153 N. C., p. 26, and *Noble v. Williams*, 167 N. C., 112, are not applicable under the facts in this case.

We can see no evidence of adverse possession from the facts appearing in the record. It may be that defendants only received the lamb's share, but we cannot disturb the well-settled devolution of real property.

For the reasons given in the judgment below, we find

No error.