ADA BROWN, EDITH STALLINGS, LILLIAN LAUGHINGHOUSE, KATE SALLEY AND HUSBAND, F. W. SALLEY, BEATRICE DU-PREE, ROSCOE STALLINGS AND WIFE, DARE STALLINGS, F. CLARENCE STALLINGS AND WIFE, BEULAH STALLINGS, GERTIE SIMPSON AND HUSBAND, FRED SIMPSON, ROLAND SIMPSON, IRENE GARDNER AND HUSBAND, ENOCH GARDNER, ONA PEAL STALLINGS, U. D. STALLINGS AND WIFE, MARTHA STALLINGS, JEANNETTE EVANS AND HUSBAND, DORSEY EVANS, J. S. GRIFFIN AND WIFE, ETHEL GRIFFIN, S. C. GRIF-FIN, LUDIE ROBERSON, GEORGE C. GRIFFIN, IRA F. GRIFFIN AND WIFE, MINNIE GRIFFIN, LESTER J. GRIFFIN AND WIFE, CHLOE GRIFFIN, CLARENCE W. GRIFFIN AND WIFE, RUTH GRIFFIN, LEONA ROBERSON AND HUSBAND, MACK ROBERSON, EVAN GRIFFIN AND WIFE, BETTY GRIFFIN, LEROY GRIFFIN AND WIFE, ESSIE GRIFFIN, LESLIE GRIFFIN AND WIFE, VERNA GRIFFIN, THURMAN GRIFFIN AND WIFE, ROSE GRIFFIN, MARY CLYDE GRIFFIN, RUBY L. HARDISON AND HUSBAND, ARCHIE HARDISON, VERLIN GRIFFIN AND WIFE, ADDIE LEE GRIFFIN, N. R. PEEL AND WIFE, CADDIE PEEL, SALLY GRIFFIN AND HUS-BAND, T. C. GRIFFIN, M. L. PEEL AND WIFE, VERNA PEEL, OS-CAR PEEL AND WIFE, OLIVIA PEEL, MYRTLE BAILEY AND HUSBAND, GORDON BAILEY, RAYMOND PEEL AND WIFE, MADE-LINE PEEL, COLLINS PEEL, JR., AND WIFE, MARTHA PEEL, HARRIETT PEEL, ANN PEEL, HILTON PEEL AND WIFE, NANCY PEEL, DOUGLAS PEEL, A MINOR, APPEARING BY HIS NEXT FRIEND, HUGH M. MARTIN, LABRON LILLEY AND WIFE, BEULAH LILLEY, FANNIE GRAINGER, HOWARD GODARD AND WIFE, LAURA GODARD, v. THURMAN COWPER AND WIFE, SARAH L. COWPER, ROSCOE B. G. COWPER AND WIFE, MARY J. COWPER, GEORGE HOWARD LINDLEY KENT AND WIFE, MARGARET L. KENT, SUSAN ELIZABETH MOORE, JANE MOORE, CLAYTON MOORE, JR., AND WIFE, JULIETTE MOORE, M. S. MOORE AND WIFE, ANNIE KATE MOORE, ANNIE C. GLASGOW, CLAYTON THIGPEN, ELIZABETH T. POOLE AND HUSBAND, HENRY H. POOLE, C. K. THIGPEN AND WIFE, LEOLA D. THIGPEN, E. L.

THIGPEN AND WIFE, RUTH H. THIGPEN, REBECCA THIGPEN, NINA THIGPEN, ELLA PAXTON, MAUDE PHILHOWER AND HUSBAND, LOUIE PHILHOWER, CLAYTON DAVIS AND WIFE, MARION DAVIS, RUSSELL DAVIS AND WIFE, EILEEN DAVIS, DR. W. L. DAVIS AND WIFE, HUMPHREY DAVIS, M. S. MOORE, GUARDIAN OF ALTON STALLINGS, M. S. MOORE, ADMINISTRATOR OF THE ESTATE OF ALTON STALLINGS, DECEASED, AND MAY TYLER.

(Filed 30 October, 1957.)

1. **Descent and Distribution §§ 2, 10—**

A grandchild who is devised lands by his maternal grandparent and whose mother is living at the time of the death of testator takes the land by purchase and *not by descent within* the meaning of G.S. 29-1, Rule 4, and upon the grandchild's death intestate, the lands descend to the grandchild's cousins and issue of deceased cousins on his father's side as well as those on the side of his mother.

2. **Descent and Distribution § 2½: Conversion § 1—**

As a general rule where real estate of a lunatic is sold under statute, or by order of court, the proceeds remain realty for the purpose of devolution on his death intestate while still a lunatic.

3. **Same: Descent and Distribution § 10d—Property acquired by guardian of insane person in exchange for incompetent's lands retains its character as realty for purpose of devolution.**

A person owned an interest in several tracts of land as heir of his mother. He was later declared incompetent and a guardian appointed. A co-heir executed a deed of trust on his interest, together with other property. The deed of trust was foreclosed and the land purchased at the sale by the *cestui*. The guardian, in a proceeding in strict compliance with G.S. 33-31, acquired for the incompetent the *cestui's* interest in one of the tracts in substitution for the incompetent's interest in the other tracts. The incompetent later died intestate without children while still insane. *Held:* The interest acquired by the incompetent from the *cestui* remained, for the purpose of devolution, lands inherited from his mother, and his cousins and the issue of his deceased cousins of the blood of his mother are entitled to inherit such interest to the exclusion of those of the blood of his father.

4. **Same—Where guardian takes purchase money deed of trust in selling incompetent's land and repurchases the land at foreclosure with the notes, the transaction does not break the line of descent.**

A person owning an interest in lands as heir of his mother was declared incompetent and a guardian appointed. Under court order, the guardian sold the interest.in the realty, taking purchase money notes secured by deed of trust for the balance of the purchase price. Upon default and foreclosure the guardian purchased the land at the sale with the unpaid notes, no money passing, and the trustee conveyed the title to the guardian. *Held:* The proceeds of sale retained the character of real estate for the purpose of devolution, G.S. 33-32, and upon the repurchase of the land with the notes, the land would descend in the same manner as it would had it not been sold, and upon the incompetent's death without issue while still insane, such interest descends to the incompetent's cousins and issue of deceased cousins of the blood of the mother to the exclusion of those of the father. G.S. 29-1, Rule 4.

APPEAL by respondents from *Bone, J.,* April Regular Term 1957 of MARTIN.

Special proceeding for a partition sale of real property situate in Martin County.

Alton Stallings, a son of William L. Stallings and his wife, Emma V. Moore Stallings, never married, and died intestate on 17 January 1956. He was insane from 1916 until his death. At the time of his death his guardian M. S. Moore held the legal title in fee for him to a three-fifths undivided interest in a tract of land of about 1,200 acres, known as the Ball Gray Farm. Annie C. Glasgow, one of the respondents and a first cousin of Alton Stallings of the blood of his mother, at the time of his death owned the other two-fifths undivided interest in fee in the same farm.

Alton Stallings' father and mother predeceased him. Two children were born of their marriage: Alton and W. Herbert Stallings. W. Herbert Stallings had no issue, and died in 1918 or 1919. Alton Stallings' heirs and next of kin are his first cousins, and the issue of his first cousins. His first cousins and the issue of his first cousins, of the blood of his father, and not of the blood of his mother, are petitioners, except May Tyler, who is a respondent. His first cousins, and the issue of his first cousins, of the blood of his mother are respondents.

The petition alleges that the petitioners and respondents own a three-fifths undivided interest in fee in the Ball Gray Farm, and sets forth with particularity the interest of each.

The answer alleges that the three-fifths undivided interest in the Ball Gray Farm owned by Alton Stallings at his death was transmitted by descent from an ancestor, to-wit, his mother Emma V. Moore Stallings. That the petitioners, and the respondent May Tyler, are first cousins, or the issue of first cousins, of the blood of his father, and not of the blood of his mother, and under G.S. 29-1, Rule 4, inherit no part of Alton Stallings' interest in the Ball Gray Farm. That the respondents, other than May Tyler, are first cousins, or the issue of first cousins, of Alton Stallings of the blood of his mother, and inherit all his interest in the Ball Gray Farm by virtue of G.S. 29-1, Rule 4. The interest of each is set forth with particularity.

The proceeding was transferred to the Civil Issue Docket.

The following facts are shown from the evidence introduced by petitioners and respondents:

Clayton Moore, Sr., who had five children, and was the owner of Ball Gray Farm, died on 26 December 1881. By his Will, which is recorded in Will Book 3, page 222, in the office of the Clerk of the Superior Court of Martin County, he devised Ball Gray Farm in fee to his grandchildren, the grandchildren of

each of his five children taking a one-fifth undivided interest therein *per stirpes.*

All the children of James E. Moore, a son of Clayton Moore, Sr., sold and conveyed their one-fifth undivided interest in fee in Ball Gray Farm to William L. Stallings by deed recorded in Deed Book 000, page 52, in the office of the Register of Deeds of Martin County. William L. Stallings died in 1905, and by his Will, which is recorded in Will Book 4, page 484, in the office of the Clerk of the Superior Court of Martin County, devised his one-fifth undivided interest in fee in Ball Gray Farm to his wife Emma V. Moore Stallings.

Maude Moore Davis, and husband J. E. C. Davis, by deed of record in Deed Book SSS, page 434, in the office of the Register of Deeds of Martin County, sold and conveyed a one-fifth undivided interest in fee in Ball Gray Farm to Emma V. Moore Stallings. Maude Moore Davis was a granddaughter of Clayton Moore, Sr., and was devised a one-tenth interest in fee in this farm by the Will of her grandfather, and she had purchased from a kinswoman a one-tenth undivided interest in fee in the same farm.

Emma V. Moore Stallings died intestate in 1912 seized and possessed in fee of a two-fifths undivided interest in Ball Gray Farm, and of six small tracts of land. W. Herbert Stallings and Alton Stallings were her only children and heirs at law.

Emma V. Moore Stallings was a daughter of Clayton Moore, Sr. Her two sons by the Will of their grandfather Clayton Moore, Sr. were devised a one-fifth undivided interest in fee in the Ball Gray Farm.

On 26 September 1914 W. Herbert Stallings executed and delivered to A. R. Dunning, Trustee, to secure his note for $12,000.00 held by the Bank of Martin County for money borrowed, a deed of trust, which is of record in Book F-1, page 584, in the office of the Register of Deeds of Martin County, and in Book 182, page 584, in the office of the Register of Deeds of Bertie County. In this deed of trust W. Herbert Stallings conveyed to A. R. Dunning, Trustee, his heirs and assigns his three-tenths undivided interest in the Ball Gray Farm, his one-half undivided interest in the six small tracts of land inherited from his mother, a tract of land he had purchased from the Williamston Land and Improvement Company, his right and interest in five tracts of timber he had purchased, a mile of railroad iron, all implements used by him in his milling and logging business, all logs, sawed timber and shingles situate at his mill, a complete ginning outfit, two gasoline boats, all his stock of merchandise in his store at Jamesville, etc.

W. Herbert Stallings having defaulted in the payment of his indebtedness secured by the deed of trust, it was foreclosed, and

at the public sale the Bank of Martin County became the last and highest bidder at the price of $12,550.00 for all the real and personal property described therein. On 19 April 1916 A. R. Dunning, Trustee, conveyed to the Bank of Martin County in fee all the real and personal property described in the deed of trust by deed recorded in Deed Book N-1, page 484, in the office of the Register of Deeds of Martin County.

On 24 April 1916 Alton Stallings was duly adjudicated incompetent from want of understanding to manage his own affairs, and the Clerk of the Superior Court of Martin County appointed J. G. Godard his guardian. On 18 May 1916 J. G. Godard, guardian of Alton Stallings, instituted a special proceeding before the Clerk of the Superior Court of Martin County, by virtue of G.S. 33-31, and in his petition alleged as follows: His ward and the Bank of Martin County own each a one-half undivided interest in six small tracts of land of which Emma V. Moore Stallings died seized and possessed, and a three-tenths undivided interest in the Ball Gray Farm. The Bank of Martin County has offered to sell and convey to his ward its three-tenths undivided interest in the Ball Gray Farm in exchange for his ward's undivided one-half interest in the six small tracts of land. That it would be for the best interest of his ward to accept the offer—the details of which are set forth, and are supported by affidavits of freeholders of Martin County. Wherefore, the guardian prays authority to accept the offer. On 20 May 1916 the Clerk of the Superior Court of Martin County entered an order authorizing and empowering J. G. Godard, guardian, to sell and convey his ward's one-half undivided interest in the six small tracts of land described in the petition to the Bank of Martin County in exchange for its deed conveying to his ward its three-tenths undivided interest in the Ball Gray Farm. On 22 May 1916 the Resident Judge of the District confirmed and approved the Clerk's order. This special proceeding is recorded in Orders and Decrees Book 6, page 250, in the office of the Clerk of the Superior Court of Martin County.

On 30 May 1916 the Bank of Martin County in consideration of $10.00 paid to it, and pursuant to and in accord with the above order, sold and conveyed to Alton Stallings by deed recorded in Deed Book N-1, page 594, in the office of the Register of Deeds of Martin County, its three-tenths undivided interest in the Ball Gray Farm. On the same date, for the same consideration, and pursuant to the same order, J. G. Godard, guardian, sold and conveyed to the Bank of Martin County by deed recorded in Deed Book N-1, page 591, in the same office, his ward's one-half undivided interest in the six small tracts of land.

On 28 October 1926 J. G. Godard, guardian of Alton Stallings, instituted a special proceeding before the Clerk of the Superior

Court of Martin County, pursuant to G.S. 33-31, to sell his ward's three-fifths undivided interest in the Ball Gray Farm. His petition has these allegations: His ward is *non compos mentis,* and for ten years has been in the State Hospital for the Insane at Raleigh. His ward has practically no estate except a three-fifths undivided interest in the Ball Gray Farm. The farm is badly run down, and is yearly decreasing in value because his ward has no funds to keep it up and to repair the buildings. His ward's cousin Annie C. Glasgow owns the other two-fifths interest in the farm, and has given an option to C. C. Fleming and Ransom Roberson to buy her interest for $8,000.00. C. C. Fleming and Ransom Roberson have offered to buy his ward's interest for $12,000.00, to be paid as follows: $3,000.00 in cash, $1,000.00 on 1 January 1928, $1,500.00 on 1 January 1929, $3,250.00 on 1 January 1930, and $3,250.00 on 1 January 1931, all deferred payments to bear interest and to be secured by a deed of trust on the property. Such a sale would be for the best interest of his ward. Wherefore, the guardian prays authority from the court to sell and convey his ward's interest in the Ball Gray Farm to C. C. Fleming and Ransom Roberson according to their offer. On 28 October 1926 the Clerk of the Superior Court of Martin County authorized and empowered the guardian to sell and convey his ward's interest in the Ball Gray Farm to C. C. Fleming and Ransom Roberson for the price of $12,000.00 according to the terms of their offer. On 30 October 1926 the Resident Judge of the District confirmed and approved the Clerk's order. This special proceeding is recorded in Orders and Decrees Book 9, page 164, in the office of the Clerk of the Superior Court of Martin County.

On 5 November 1926 J. G. Godard, guardian of Alton Stallings, in consideration of $3,000.00 cash paid him by C. C. Fleming and Ransom Roberson, and in further consideration of their execution and delivery to him of their four notes in the sum of $9,000.00 secured by a deed of trust upon the land conveyed, sold and conveyed to C. C. Fleming and Ransom Roberson, their heirs and assigns, his ward's three-fifths undivided interest in the Ball Gray Farm by deed recorded in Deed Book W-2, page 434, in the public registry of Martin County. On the same date C. C. Fleming and Ransom Roberson secured their four notes to J. G. Godard, guardian of Alton Stallings, by a deed of trust upon a three-fifths undivided interest in the Ball Gray Farm, which deed of trust is recorded in Book Y-2, page 52, public registry of Martin County. A. R. Dunning was named trustee in the deed of trust.

J. G. Godard resigned as guardian of Alton Stallings, and M. S. Moore on 20 May 1929 was duly appointed to succeed him.

A. R. Dunning, trustee, in the Fleming and Roberson deed of

trust died, and in January 1933 Elbert S. Peel was duly sub-stituted as trustee in his place.

C. C. Fleming and Ransom Roberson having defaulted in the payment of their note secured by the deed of trust, it was fore-closed and at the public sale M. S. Moore, guardian of Alton Stallings, became the last and highest bidder for a three-fifths undivided interest in Ball Gray Farm at the price of $6,000.00, and on 20 November 1942 Elbert S. Peel, substituted trustee, sold and conveyed to M. S. Moore, guardian of Alton Stallings, a three-fifths undivided interest in the Ball Gray Farm, by deed which is recorded in Book C-4, page 599, of the public registry of Martin County.

In the answer M. S. Moore, who was guardian of Alton Stal-lings, states that he claims no interest in the Ball Gray Farm, except as a first cousin of Alton Stallings of the blood of his mother.

The following issue was submitted to the jury:

"Do the petitioners and respondents own the tract of land described in paragraph one of the petition as tenants in common in the proportions set out in paragraph two of the petition?"

The judge instructed the jury, "if you believe the evidence and find the facts to be as all the evidence tends to show, it would be your duty to answer that issue, "Yes." The jury an-swered the issue, Yes.

Judgment was entered upon the verdict adjudging that peti-tioners and respondents own the tract of land described in the petition as tenants in common in the proportions set out in paragraph two of the petition.

Respondents appeal.

*Clarence W. Griffin for Plaintiffs, Appellees.*
*Peel & Peel for Defendants, Appellants.*

PARKER, J. At the Fall Term 1956 there was before us the case of *Peel v. Moore*, 244 N.C. 512, 94 S.E. 2d 491, which was a controversy without action to determine the sufficiency of a deed to convey title, submitted to the Court under G.S. 1-250. The plaintiff was a first cousin of Alton Stallings of the blood of his father, and the defendant was a first cousin of Alton Stallings of the blood of his mother. The question sought to be presented for decision in that case is the same question pre-sented for decision in the instant case. We set the judgment aside, and remanded the case for further proceedings, because all the interested persons were not parties. In the instant case where all the interested persons are parties, the facts in some important respects are different from the facts in the former case.

The record shows that the respondents filed an answer, appealed from the judgment, and filed a brief. May Tyler is a respondent, and a first cousin of Alton Stallings of the blood of his father. It would seem that there is a mistake in including her among the appealing respondents.

W. Herbert Stallings and Alton Stallings acquired a one-fifth undivided interest in the Ball Gray Farm as devisees under the Will of their grandfather Clayton Moore, Sr. At the time of the death of the devisor, Clayton Moore, Sr., their mother Emma V. Moore Stallings, who was a daughter of Clayton Moore, Sr., was living, and would have taken a one-fifth undivided interest in the Ball Gray Farm as an heir, had he died intestate. Therefore, W. Herbert Stallings and Alton Stallings at the death of their grandfather were not his heirs or one of his heirs, within the meaning of G.S. 29-1, Rule 4, and necessarily took the one-fifth undivided interest in the Ball Gray Farm as purchasers in its general sense. W. Herbert Stallings and Alton Stallings took this one-fifth undivided interest by devise, and could not have claimed as heirs of their grandfather Clayton Moore, Sr., had the latter died intestate. It follows that the one-tenth undivided interest in the Ball Gray Farm devised to Alton Stallings by his grandfather must be treated as a new acquisition by him, and such a new acquisition in the event of his death intestate would descend to his first cousins, and the issue of his first cousins, on his father's side as well as to those on the side of his mother. G.S. 29-1, Rules 4 and 5; *Peel v. Corey,* 196 N.C. 79, 144 S.E. 559; *Osborne v. Widenhouse,* 56 N.C. 238; *Burgwyn v. Devereux,* 23 N.C. 583.

W. Herbert Stallings took a one-tenth undivided interest in the Ball Gray Farm as a purchaser in its general sense by the will of his grandfather. He took a one-fifth undivided interest in the same farm, and a one-half undivided interest in six small tracts of land, as one of the heirs of his mother, within the meaning of G.S. 29-1, Rule 4. He placed a deed of trust upon his three-tenths undivided interest in this farm, and upon his one-half undivided interest in the six small tracts of land, and upon a large amount of his other property, to secure his note for $12,000.00 for money borrowed from the Bank of Martin County. Having defaulted in the payment of his note, the deed of trust was foreclosed, the Bank of Martin County at the foreclosure sale became the last and highest bidder, and A. R. Dunning, Trustee in the deed of trust, conveyed by deed all the property covered by the deed of trust to the Bank of Martin County, its successors and assigns.

Alton Stallings took a one-fifth undivided interest in the Ball Gray Farm, and a one-half undivided interest in six small tracts of land, as one of the heirs of his mother within the meaning of

G.S. 29-1, Rule 4. He became insane in 1916, and remained insane until his death. On 24 April 1916 he was duly adjudicated incompetent from want of understanding to manage his affairs, and J. G. Godard was duly appointed his guardian by the Clerk of the Superior Court of Martin County. Pursuant to a decree duly entered in a special proceeding for the purpose on 20 May 1916 by the Clerk of the Superior Court of Martin County, and confirmed by the Resident Judge of the district on 22 May 1916, Alton Stallings' guardian sold and conveyed to the Bank of Martin County his ward's one-half undivided interest in the six small tracts of land transmitted to his ward by descent from his mother in exchange for the Bank of Martin County selling and conveying to his ward its three-tenths undivided interest in the Ball Gray Farm. The guardian was authorized by G.S. 33-31 to make such private sale, and the terms of the statute were carefully complied with.

The general rule is that, where the real estate of a lunatic is sold under a statute, or by order of court, the proceeds of sale remain realty for the purpose of devolution on his death intestate while still a lunatic. Anno. 90 A.L.R., p. 909 *et seq.*, where the cases are assembled; Anno. Ann. Cas. 1915A, p. 158 *et seq.*; 18 C.J.S., Conversion, p. 75; 19 Am. Jur., Equitable Conversions, Sec. 23; Tiffany on Real Property, 3rd Ed., Sec. 306; Story's Equity Jurisprudence, 14th Ed., Sec. 1101; Pomeroy's Equity Jurisprudence, 5th Ed., Sec. 1167. See *Black v. Justice*, 86 N.C. 504, marginal p. 512; *Bryson v. Turnbull*, 194 Va. 528, 74 S.E. 2d 180; *McCoy v. Ferguson*, 249 Ky. 334, 60 S.W. 2d 931, 90 A.L.R. 891. The equitable doctrine is that upon the involuntary sale by a guardian, under a judicial decree, of the land of an insane person, incapable by reason of his insanity of intelligent assent and of dealing with his real estate, the proceeds of sale should be impressed with the character of the land sold, and should pass as such at his death if the disability of insanity has not been removed. The object of the rule is to prevent, as far as possible, any alteration by the guardian of a lunatic of the respective rights of the heirs of such lunatic in his real property should he die still a lunatic. See 89 Am. St. Rep., note pp. 313-314.

G.S. 33-32, codified under Ch. 33, Guardian and Ward, is captioned "Fund from sale has character of estate sold and subject to same trusts," and its relevant part reads: ". . . in all sales by guardians whereby real is substituted by personal, or personal by real property, the beneficial interest in the property acquired . . ., shall descend and be distributed, as by law the property sold might and would have been had it not been sold, until it be reconverted from the character thus impressed upon it by some act of the owner and restored to its character proper."

This statute does not in explicit words refer to the case where real property is substituted by real property. However, considering the general rule as to the sale of an insane person's real property under a court order, and the purpose and intent of G.S. 33-32, we conclude that the three-tenths undivided interest in the Ball Gray Farm conveyed to Alton Stallings by the Bank of Martin County in exchange for his one-half undivided interest in the six small tracts of land transmitted to him by descent from his mother would, upon his death intestate and continuously insane from prior to the appointment of his guardian until his death, nothing else appearing, descend as by law his one-half undivided interest in the six small tracts of land would descend, if his one-half undivided interest in the six small tracts of land had not been sold, conveyed and exchanged.

The transaction between the Bank of Martin County and the guardian of Alton Stallings was not a partition proceeding, as contended by respondents. It is generally held that a true partition among tenants in common of real property which they hold as an ancestral estate does not affect the ancestral character of the tract taken by each. The rationale of this view is that by such a transaction no new estate is acquired and no change in the title occurs. Each of the parties takes his allotment not by purchase, but is seized of it as much by descent from the common ancestor as he was by the undivided shares before the partition. *Elledge v. Welch,* 238 N.C. 61, 76 S.E. 2d 340; *In re Moran's Estate,* 174 Okla. 507, 51 P. 2d 277, 103 A.L.R. 227; Anno. 103 A.L.R. 231. The transaction between the Bank of Martin County and the guardian of Alton Stallings resulted in Alton Stallings acquiring a legal title to a three-tenths undivided interest in the Ball Gray Farm, which he did not own before.

After the execution of the deed from the Bank of Martin County, Alton Stallings had a three-fifths undivided interest in the Ball Gray Farm: a one-fifth undivided interest transmitted by descent from his mother, a one-tenth undivided interest as a devisee under the will of his grandfather, and a three-tenths undivided interest received from the Bank of Martin County. As set forth above, his one-tenth undivided interest derived by will from his grandfather was an estate of nonancestral character, and the remaining part, a five-tenths undivided interest, was an estate of an ancestral character.

In compliance with an order of court duly entered in a special proceeding instituted for that purpose, J. G. Godard, guardian of Alton Stallings, by deed dated 5 November 1926, conveyed to C. C. Fleming and Ransom Roberson, their heirs and assigns, his ward's three-fifths undivided interest in the Ball Gray Farm for a consideration of $12,000.00—$3,000.00 paid in cash, and

BROWN *v.* COWPER.

their four notes for $9,000.00 secured by a deed of trust upon the property conveyed. Fleming and Roberson having defaulted in the payment of their notes, the deed of trust was foreclosed, and the guardian of Alton Stallings became at the foreclosure sale the last and highest bidder for a three-fifths undivided interest in the Ball Gray Farm in the amount of $6,000.00. At the time of the sale Fleming and Roberson owed on their notes $10,086.48. No money passed. Elbert S. Peel, substituted trustee in the deed of trust, conveyed a three-fifths undivided interest in the Ball Gray Farm to the guardian of Alton Stallings.

When the three-fifths undivided interest of Alton Stallings, an insane person, in the Ball Gray Farm was sold by his guardian under court order to C. C. Fleming and Ransom Roberson, the proceeds of sale retained the character of real estate for the purpose of devolution on his death intestate while still insane, and would go as his interest in the farm would had it not been sold. G.S. 33-32; *Scull v. Jernigan,* 22 N.C. 144; *Gillespie v. Foy,* 40 N.C. 280; *March v. Berrier,* 41 N.C. 524; *Dudley v. Winfield,* 45 N.C. 91; *Jones v. Edwards,* 53 N.C. 336; *Bateman v. Latham,* 56 N.C. 35; *Wood v. Reeves,* 58 N.C. 271; *State ex rel. Allison v. Robinson,* 78 N.C. 222; *McLean v. Leitch,* 152 N.C. 266, 67 S.E. 490; *Brown v. Wilson,* 174 N.C. 636, 94 S.E. 416. The cases we have cited deal with the proceeds of a sale of an infant's real estate under an order of court, but we think the same principle applies to the proceeds of a sale of an insane person's real estate under an order of court.

But Fleming and Roberson did not, and probably could not, pay their $9,000.00 of purchase money notes, which notes represented the major part of the proceeds of sale of Alton Stallings' three-fifths undivided interest in the Ball Gray Farm. When his guardian used these unpaid purchase money notes to buy back for his ward at the foreclosure sale under the deed of trust securing them the identical three-fifths undivided interest in the Ball Gray Farm, which his insane ward formerly owned, and which he sold to Fleming and Roberson under court order, we conclude that, according to the general rule as to the sale of an insane person's real property under a court order, and the purpose and intent of G.S. 33-32, this three-fifths undivided interest in this farm, which the guardian bought back for his insane ward will descend under the facts here as this interest in the farm of his insane ward would descend if it had not been sold under court order.

The general rule, subject to an exception where the title passed but momentarily and without an intention of breaking the line of descent, is that if one *sui juris* who is in by descent conveys his legal title and interest in real property away, and it be conveyed back to him, the line of descent is broken, and

he holds thereafter by purchase and not by descent. Coke's Commentary upon Littleton, Vol. 1, 12b, 1st American from the 19th London Ed., corrected 1853, with Notes by Butler and Hargrave and including the note to the text; *Doe on the Demise of Harman v. Morgan,* 7 T.R. 103, 101 Eng. Reprint 878; Lord Halsbury's Laws of England, Vol. 8, p. 87 (1909) ; Broom and Hadley's Commentaries, top page 660; *Nesbitt v. Trindle,* 64 Ind. 183; *Holmes v. Shinn,* 62 N.J. Eq. 1, 49 A. 151; *Dudrow v. King,* 117 Md. 182, 83 A. 34, 39 L.R.A. (N.S.) 955, Ann. Cas. 1913E 1258; 39 L.R.A. (N.S.) 955; Anno. Ann. Cas. 1913E 1262; *Roney v. Dyer,* (Court of Appeals of Tenn., Western Section, *certiorari* denied by Tenn. Supreme Court 17 Feb. 1940), 161 S.W. 2d 640; 26A C.J.S., Descent and Distribution, pp. 547-548; 16 Am. Jur., Descent and Distribution, p. 845; Tiffany, Real Property, 3rd Ed., Vol. 4, p. 389; 12 Columbia Law Review, Breaking Descent by Alienation, p. 625. But in the instant case we have the sale of an insane person's real property under a court order, and we hold that under the facts here, and in view of the general rule as to the sale of an insane person's real property under a court order, and in view of G.S. 33-32, the conveyance to Fleming and Roberson, and the purchase back of the identical real property by the use of the unpaid purchase money notes did not break the line of descent.

G.S. 29-1, Rule 4, reads: "Collateral descent of estate derived from ancestor. On failure of lineal descendants, and where the inheritance has been transmitted by descent from an ancestor, or has been derived by gift, devise or settlement from an ancestor, to whom the person thus advanced would, in the event of such ancestor's death, have been the heir or one of the heirs, the inheritance shall descend to the next collateral relations, capable of inheriting, of the person last seized, who were of the blood of such ancestor, subject to the two preceding rules." G.S. 29-1, Rule 3, reads as follows: "Lineal descendant represents ancestor. The lineal descendants of any person deceased shall represent their ancestor, and stand in the same place as the person himself would have done had he been living." G.S. 29-1, Rule 2, provides that females inherit with males, younger with older children, and as to advancements.

G.S. 29-1, Rule 5, reads: "Collateral descent of estate not derived from ancestor. On failure of lineal descendants, and where the inheritance has not been transmitted by descent or derived as aforesaid from an ancestor, or where, if so transmitted or derived, the blood of such ancestor is extinct, the inheritance shall descend to the next collateral relation, capable of inheriting, of the person last seized, whether of the paternal or maternal line, subject to the second and third rules."

Alton Stallings was continuously insane from prior to the

appointment of J. G. Godard as his guardian on 24 April 1916 until his death on 17 January 1956. He died intestate. He never married. His mother and father had predeceased him. He had one brother and no sister: his brother predeceased him, and had no issue. Alton Stallings' heirs at law are his first cousins, and the issue of his first cousins, of the blood of his father, and of the blood of his mother.

According to the uncontradicted evidence before us, Alton Stallings at his death had a one-tenth undivided interest in the Ball Gray Farm, which came to him as a devisee under the will of his maternal grandfather, his mother being alive when her father died, and this one-tenth undivided interest was an estate of nonancestral character, and descends, according to G.S. 29-1, Rule 5, to his first cousins, and the issue of his first cousins, of the blood of his father, and of the blood of his mother.

According to the uncontradicted evidence before us, Alton Stallings at his death had a five-tenths undivided interest in this farm, which was, as set forth above, an estate of ancestral character, and this five-tenths undivided interest descends, according to G.S. 29-1, Rule 4, to his first cousins, and the issue of his first cousins, of the blood of his mother.

M. S. Moore, guardian of Alton Stallings, disclaims in the answer filed by him and the other respondents any interest in the real property of his ward, except as an heir of his ward of the blood of his mother.

The assignment of error to the charge is sustained. A new trial is ordered.

New trial.