HAGGARD
vs
ROUT'S HEIRS.

---

## Haggard *vs* Rout's heirs,

### ERROR TO THE CLARKE COUNTY COURT.

*Wills. Conversion. Guardian and ward. Descents.*

JUDGE MARSHALL delivered the opinion of the Court.

JAMES ROUT by his last will directed the sale by his executor of the tract of land on which he lived, and that the proceeds should be invested in other lands. He also authorized his executor to sell any of his property he should think proper to sell, and the money arising there-

CHANCERY.

*Case* 49.

*Oct.* 21.

The case stated.

from to be put out at interest if there should be more than sufficient for the necessary support of his family. He also willed that the whole of his estate should be left in the possession of his wife for the maintenance of herself and the maintenance and schooling of his children, during her life or widowhood; and that in case she should marry she should have the portion of his estate which the law provides for a widow where a man dies intestate, and further that all his children shall have an equal portion of his estate after they shall get their raising and schooling. The testator died leaving a widow and four infant children. The executor sold the tract of land on which he had lived and also another tract, the first for $500 the other for $800 which two sums seem to have been all that was left for the widow and children after payment of debts. After both sales of the land, the widow married William Haggard who seems to have supported the four children, and of this second marriage there were born three children. During the subsistence of this second marriage one of the four children of Rout the testator died an infant and unmarried, leaving his mother, and three brothers and sister of the whole blood, and three of the half blood, and afterwards the mother died.

After Haggard's marriage with Mrs. Rout he was appointed guardian of the four children of the first marriage, and the executor having previously paid the entire interest accruing on the $1300 the proceeds of the land to Mrs. Rout, paid it afterwards to Haggard to whom at length during the lives of his wife and all the children he paid the principal itself. After all these events Haggard settled his accounts as guardian with the Commissioners, to whose report he excepted in the County Court; and having excepted also to the determination of that Court, he brings up the settlement as therein adjusted for the revision of this Court.

The principal questions presented by the record, are, Questions presented in the case. 1st. whether in ascertaining the interest of Mrs. Haggard in the money arising from the sale of the land, the whole or any part thereof should be regarded as mere personalty. 2d. What was the interest of the deceased son of the testator Rout and to whom and in what proportions

did it pass on his death? 3d. Should the credits allow-
ed to the guardian in account with each of his wards be
restricted to the interest annually accruing on the wards,
share of the money in his hands?

1st. Upon the first question, we think it very clear that
the proceeds of the tract of land on which the testator
lived being directed to be laid out in other land, must be
regarded as land though it has not yet been reinvested,
and therefore that the widow on her marriage became en-
titled to one third of it for life only. We have stated that
another tract was sold, because two parcels apparently
distinct were sold to different purchasers. But both may
in fact be parts of the tract on which the testator lived.
If so, the principle already stated applies to the entire
sum of $1300 raised by the sale of both parcels, and de-
termines that Mrs. Haggard's interest therein was for life
only; and that her husband is entitled to retain no part
of the principal sum as for the third of his wife in the per-
sonal estate. If however one of the parcels should not be
a part of the tract on which the testator resided, then the
proceeds from the sale of that tract were not impressed
with the character of real estate. But as the testator did
not direct the sale of any such tract but left it discretion-
ary with the executor, it follows that although when the
sale was made the proceeds became mere personalty, yet
until the actual conversion took place the land is to be
regarded as real estate, and cannot be considered as hav-
ing been converted at and from the time of the testator's
death. And as in our opinion the provision of the will
declaring the interest of the testator's widow in case of
his marriage relates back to the time of his death and
determines her interest according to the condition of his
estate at that time, and the law as applicable to it, we
conclude that even if one of the parcels sold was dis_
tinct from the home tract, still the widow upon her mar-
riage was only entitled to a life interest in the distinct
parcel or in its proceeds, and therefore on either hypothe-
sis her surviving husband can retain no part of the pro-
ceeds of the land as for her third, having received the
profits of one third in the shape of interest or in the use
of the money during her life.

*Money directed
to be vested in
land, is to be re-
garded as if so
vested, and the
widow is entitled
to the interest of
one third for life,
of the fund when
it is not so laid
out.*

*—But if land is
to be sold at the
discretion of an
executor its
character as real
estate is not
changed until an
actual conver-
sion, but when
so changed, she
or her husband,
if she marry,
becomes entitled
to the interest of
one third of
price.*

HAGGARD
*vs*
ROUT'S HEIRS.

A testator direct-
ed his executor
to sell a particu-
lar tract of land
and vest the pro-
ceeds in other
lands, left four
children, one of
whom died leav-
ing no issue—
Held that the
brothers and sis-
ters were enti-
tled to the por-
tion of such
child and the
mother to no part
of it.

2d. But under the second question, it may become material to determine whether all the land sold or only one of the parcels belonged to the testator's home tract. For if all of the land sold belonged to the home tract, then as the entire proceeds were directed to be laid out in land, and therefore still retained the character of real estate notwithstanding the first conversion, it follows that as this real estate came to the deceased son of Rout from his father, no portion of it descended to his mother on the death of the infant, but it passed by descent to his brothers and sisters of the whole and half blood, the latter being entitled to half shares only *Clay &c.* vs *Cousins*, (1 *Monroe*, 75,) and in that case the three wards of Haggard being entitled to six ninths and his own children to three ninths of the proceeds of the land Haggard as guardian is chargable in this settlement with but two thirds of the portion of said infant decedent.

But where land
is directed to be
sold at the dis-
cretion of the
executor, and
the proceeds
placed at inter-
est, it being con-
verted into per-
sonalty before
the death of such
child, the mother
takes with the
brothers and sis-
ters of the de-
ceased child and
half brothers and
sisters, half
shares.

But if one of the parcels of land sold by the executor formed no part of the testator's home tract; then by the sale the land was actually converted into money without any characteristic of real estate being impressed on it by the will, and therefore on the subsequent death of one of the testator's infant children to whom it was bequeathed, his portion of the money passed as personal estate to his mother, brothers and sisters, the three brothers and sisters of the half blood taking half shares only. On this hypothesis the portion of the infant decedent should be divided into eleven shares of which his mother and each of his brothers and sisters of the whole blood was entitled to two, and each of his brothers and sisters of the half blood to three. So that only six of the eleven shares would be chargable to Haggard as guardian in this settlement.

Where the will
directed an equal
division a-
mongst the chil-
dren of the tes-
tator after main-
tenance and
schooling—Held
that though the
children on the

In our conclusions under this second question we have assumed what we think is the true construction of the will, that each of the testator's children had an equal interest in his estate immediately upon his death, though not to be received into their separate possession otherwise than in the form of maintainance and schooling until a future period.

3d. Under the third question it will also be material to ascertain whether the two parcels of land sold by the executor constituted together the testator's home tract, or whether one of them was a distinct tract. In the former case, as the proceeds of all the land sold were directed to be laid out in land, the guardian was not authorized to use any part of the principal in the maintainance of his wards, and the settlement in that respect is correct. But in the latter case, as the money arising from the sale of other property than the home tract is by the terms of the will subjected to the necessary support of the family, we are of opinion that the guardian was not absolutely restricted to the expenditure of the annual interest in the support of his wards, but might so far as was necessary for their proper support according to their circumstances and condition make moderate encroachments upon the principal. How far he might go would be very much a matter of prudence and discretion of which the Commissioners and the Court must in view of all the facts be the final judges. We only decide that in the case last supposed the credits to the guardian for the support and maintainance of his wards are not necessarily to be restricted to the annual income or profits on their portions of the estate. But he should not be allowed to infringe upon the principal unless in justice to himself and the children it was necessary for him to do so.

The application of these principles to the settlement as adjusted by the County Court leads to the conclusion that Haggard has been charged too much for the interest of his wards in the estate of their deceased brother, and that he may perhaps have been allowed too little for their support and maintainance. The corrections made in the settlement by the County Court were proper, but others should have been made upon the facts before them, and there are other facts involved which cannot be sufficiently ascertained to determine what is just between the parties. Wherefore the orders in each of the three cases overruling the exceptions to the settlement and confirming it as corrected by the Court are reversed and the cause is remanded with directions to refer each case back to the Commissioners for the ascertainment of facts and a re-

HAGGARD
*vs*
ROUT'S HEIRS,

death of the testator took equal interests, the division was not to be made until they were all raised & schooled.

Where land is directed to be sold and re-vested in lands, no part of the principal can be expended in the education and raising children. But if to be sold at the discretion of executor, part of the principal may, if necessary, be used to raise and educate children according to their circumstances and condition in life.

settlement of the accounts according to the principles of this opinion.

*Geo. Smith* for plaintiff: *Hanson* for defendants.