## McCoy et al. v. Ferguson et al.

(Decided May 23, 1933.)

336

H. H. HUFFAKER, JOHN R. MOREMAN, KIRK & WELLS and W. K. WELLS for appellants.

J. H. ADKINS, STRATTON & STEPHENSON, J. M. BOLLING and A. E. AUXIER for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Vernon Ferguson on the 2d day of June, 1923, was an infant, fifteen years of age, residing in Pike county, Ky. C. F. McCoy by proper orders of the county court was appointed and qualified as his guardian. John M. Ferguson, a resident of Pike county, Ky., died testate, leaving surviving him several children, including Vernon Ferguson, Sr. An action was instituted to partition the land owned by John M. Ferguson among the devisees named in his will. Vernon Ferguson, Sr., was allotted 110 acres, and accordingly a deed was executed and delivered to him on the 19th day of April, 1899. Vernon Ferguson, Sr., died intestate, leaving Vernon Ferguson, Jr., surviving him as his only child and heir at law, but left surviving him a widow, Florence Cox Ferguson, who married C. F. McCoy, the present guardian of Vernon Ferguson, Jr. There were born to Florence Ferguson McCoy and C. F. McCoy four children, Ernest, Clyde, Zelma, and Eugene McCoy, who, of course, are half brothers and sisters of Vernon Ferguson, Jr.

Condemnation proceedings were instituted in the United States District Court of the Eastern District of Kentucky to condemn a portion of the 110 acres which descended to Vernon Ferguson, Jr. The land was sold under a judgment of the court, the purchaser paying therefor $15,000, which was paid to C. F. McCoy as guardian for Vernon Ferguson, Jr., on the 2d day of June, 1923. Vernon Ferguson, Jr., married Vadna Ferguson, then died intestate, without issue, still an infant, in the year 1927, leaving her surviving him as his widow. Ernest, Clyde, Zelma, and Eugene McCoy, his half brothers and sisters, and J. M. Ferguson, his grandfather, are his only heirs at law. C. F. McCoy as guardian of Vernon Ferguson, Jr., made settlements with the county court of Pike county, of his accounts as guardian. After the death of Vernon Ferguson, Jr., his grandfather, J. M. Ferguson, filed this action

against C. F. McCoy, guardian, to surcharge these settlements, and to require an accounting and the payment of the $15,000 to him, insisting that the money was the proceeds of land arising from a sale in the condemnation proceedings, and that same were real estate under the statutes of descent and distribution of Kentucky, and that under section 1401, Ky. Stats., as grandfather, he was entitled thereto, Vernon Ferguson, Jr., having acquired during infancy, the land by descent from his father, and departed this life before the age of maturity. A judgment was rendered in accordance with the prayer of the petition. On appeal to this court it was reversed because of defect of parties. On its return to the circuit court, Vadna Ferguson, Ernest, Clyde, Zelma, and Eugene McCoy, by appropriate pleadings, were made parties. Vadna Ferguson as widow asserted her rights to the $15,000 as personalty and asked that if it be determined by the court that the $15,000 was not personalty, then she was entitled to dower therein as the widow of Vernon Ferguson, Jr., under section 2132, Ky. Stats. She also, by proper allegations, sought to surcharge the settlements of C. F. McCoy as guardian of Vernon Ferguson, Jr. Ernest, Clyde, Zelma, and Eugene McCoy asserted that the $15,000 was personal property under the statute of descent and distribution and that they and the widow were entitled to the whole of it. Section 1395 and 1403, Ky. Stats. The circuit court on the pleadings and the evidence allowed C. F. McCoy credits totaling $1,235, charged him with $13,765, and decreed that the same having been realized from the sale of land by the United States government in the condemnation proceedings, and Vernon Ferguson having died in infancy, without issue, the residue of the $15,000 was real estate within the meaning of sections 1393 and 1401, Ky. Stats.; that Vadna Ferguson was entitled to 24.3 per cent., or $1,998.35, as of September 8, 1929, as her dower therein, and that J. M. Ferguson, the grandfather of Vernon Ferguson, was entitled to the residue, or 75.7 per cent., amounting to $6,225.32 as of September 8, 1927, with interest. A judgment was so entered against C. F. McCoy as guardian and the United States Fidelity & Guaranty Company as surety on his bond. At the time of the rendition of the judgment there were, in the hands of McCoy as guardian on deposit in the Pikeville National Bank, $4,041.33, and a note of T. M. Berry, etc., of $1,500, secured by a mort-

gage. This cash and note were directed by the judgment to be paid and delivered in part satisfaction of the $13,765 with which the guardian was charged. Relief was denied the half brothers and sisters of Vernon Ferguson, Jr. The parties are here presenting the same contentions they respectively made in the circuit court.

A judicial sale of the land was a conversion of the real estate into personalty. The proceeds in the hands of the guardian, from the moment he received them until the death of the ward, were, and continued to be, personal property as between him and his ward, within the meaning of section 2015, Ky. Stats., et seq. At the death of the ward, only for the purpose of descent and distribution, the proceeds are regarded by the law as real estate. Until his death, they were personal property in the hands of his guardian, and controlled by section 2027 and including section 2043, Ky. Stats., and the construction thereof as has been given them in many cases by this court.

Subsection 6 of section 494 of the Civil Code of Practice provides that real estate owned by persons under disability, such as infancy, unsound mind, or an adult married woman, when sold under the provisions of chapter 14 of the Civil Code of Practice, when such owner shall die without issue, without having received the proceeds, the person who would have been entitled to the property, if it had not been sold, shall be entitled to the proceeds, or the property in which they have been invested. Weisiger v. McDonald, 116 Ky. 862, 76 S. W. 1080, 81 S. W. 687, 25 Ky. Law Rep. 1053, 26 Ky. Law Rep. 416; Terrell v. Maupin, 83 S. W. 591, 26 Ky. Law Rep. 1203. While the provisions of this section do not embrace sales of land of an infant who dies in infancy, without issue, when not made under the provisions of chapter 14, Civil Code of Practice, before the proceeds have been disposed of by his guardian in the exercise of the power and in the discharge of the duties imposed upon him by section 2027, Ky. Stats., et seq., yet this Code provision manifests the policy of the law not to permit a judicial sale of an infant's land and a conversion thereby into personalty, to exempt the proceeds from the operation of the statutes of descent and distribution of the real estate of an infant. Collins v. Champ's Heirs, 15 B. Mon. 118, 61 Am. Dec. 179.

In McClain v. McClain, 151 Ky. 356, 151 S. W. 926, Ann. Cas. 1915A, 155; Id., 152 Ky. 206, 153 S. W. 234, Ann. Cas. 1915A, 155, the real estate of a lunatic was sold by order of court for the purpose of paying his debts. It was held that the surplus proceeds remained realty and the widow was entitled only to dower therein, such surplus not having been disposed of by the husband during his life.

In Haggard v. Rout's Heirs, 6 B. Mon. 247, a testator directed his executrix to sell a particular tract of land and invest the proceeds in other lands. He left surviving him four children, one of whom died in infancy leaving no issue, and for the purpose of disposition, it was held that the proceeds retained the character of real estate notwithstanding the conversion, and passed by descent and distribution to the surviving brothers and sisters.

In Weisiger v. McDonald, supra, on petition of the guardian the infant's land was sold for reinvestment. Before the money derived from the sale was invested, and while it was in the hands of the guardian, the infant died. It was held that the fund realized from the sale of the land stands in place of the land and is governed by the same law. This pronouncement was reiterated in McDonald v. Weisiger, 100 S. W. 832, 30 Ky. Law Rep. 1224. In Williamson v. Williamson, 223 Ky. 589, 4 S. W. (2d) 392, coal lands were leased by the husband, providing for a royalty. The husband died after the lease was executed. It was held that the royalty accruing after his death was a species of real estate in which the surviving widow had dower and that she was entitled to one-third of the royalty accruing after his death.

In Farris v. Bingham, 164 Ky. 444, 175 S. W. 649, the infant's land was sold for his support and maintenance. It was held that the sale had the effect to convert the real estate into personalty for the specific purpose named, and the funds arising therefrom may be used in the manner contemplated in that proceeding. The precise question here under consideration was not presented nor determined in any one of these cases.

In Pomeroy's Equity Jurisprudence, vol. 3, sec. 1167, the rule is thus stated:

"Where land is taken or purchased under compul-

sory powers conferred by statute and the owner is sui juris the conversion is effected; but if the owner is an infant or a lunatic or the land is in settlement, the purchase money remains land; there is no conversion. Where the land is sold by an order of court for any purpose it is a fixed principle upon which the court always proceeds that the character of the property shall be changed only so far as may be necessary to accomplish the particular purpose.'' Story's Equity, vol. 2, sec. 1101.

The rule rests upon the principle that during disability, neither a married woman, infant, nor lunatic can exercise the right of election to take their respective interest as money, and therefore the proceeds will be held in their unconverted character as realty until such election can be legally made. McLean v. Leitch, 152 N. C. 266, 67 S. E. 490. It may be safely said that it is a universal rule without exception that when real estate of an infant is converted into money by statute, or by order of court, and he dies without issue before attaining his majority, the fund will be treated as real estate and as such will descend to the heirs at law of the infant. It is apparent that it is our conclusion that the $15,000 received by the guardian as the proceeds of the sale of the land of Vernon Ferguson, Jr., during his infancy were personal property subject to the expense of his support and maintenance, and having died before attaining his majority, the residue descended as real estate and as such should be distributed according to the statutes applicable to the distribution of the proceeds of real estate. The action was referred to a special commissioner to audit and settle the accounts of the guardian. The commissioner in his report refused to allow the guardian credit by the amounts claimed by him for the support and maintenance of the ward. He reported certain items of credit should be allowed and particularly allowed items for building material and labor used in erecting, painting, and repairing buildings of the ward and taxes for certain years, and recommended that the guardian be credited therefor. On exceptions of John M. Ferguson to the report, the court refused to allow the above credits and allowed only the credits for the other items shown in the judgment, aggregating $1,235. The testimony of McCoy shows many items expended by him for the support and maintenance of the ward, including a team and wagon, doctor's,

medicine, and hospital, bills, board and clothing, and other items, both before and after the marriage of the ward, credits for which he is entitled. The guardian should be charged with the $15,000 and interest from every source on the balance owing by him as guardian at the end of any year, beginning with the time of his appointment, and thereafter charged interest upon interest at biennial rests, and he should account for any rents received by him for the use of the real estate of the ward, including that occupied by himself. He is entitled to credits by the amounts expended by him for material and labor in the improving the buildings on the real estate of the ward; also by such items paid for the maintenance and support of the ward before his marriage, including taxes, the wagon and team, board, clothing, and other necessaries, suitable to his age, health, and station in life, and the cost of clothing and other necessaries furnished to him or to his wife after his marriage, including household and kitchen furniture. Ordinarily a guardian may not exceed the income of the ward's personal estate, and it is better always to consult the chancellor before making expenditures out of the principal of the personal estate, but if the expenditures are for such necessaries as the court would authorize to be incurred, if application is made therefor in advance of the payment, the fact that application was not made in advance does not deprive the guardian of credit therefor if the payment thereof would have been approved by the chancellor in advance of the incurring of such expenses. The physician's, medical, and hospital bills during the ward's last illness, including board and room, whether paid out of the interest or the principal, were necessary for his condition, and the guardian is entitled to credit therefor. The evidence discloses that the guardian paid fines for the ward in order to enable him to be released from jail where he was confined in satisfaction of a judgment of conviction for a misdemeanor. Under the circumstances of the case, we regard the payment of the fines by the guardian within the category of necessaries, and credit should be given him therefor. It is argued that the testimony of the guardian concerns transactions with a decedent and therefore it should not be considered. The plaintiff examined McCoy as upon cross-examination. The rule is, if a party is incompetent as a witness for himself, concerning transactions with a decedent and is called

as a witness by the adverse party, and his deposition is taken in behalf of the party calling him, as to such transactions about which he is so examined, his incompetency is removed and he may thereafter testify as to those matters concerning which he was interrogated. Arnold v. Cocanaugher, 170 Ky. 712, 186 S. W. 488; Wilhelm v. Orlamuende's Adm'x, 228 Ky. 719, 15 S. W. (2d) 511. It must be regarded that the plaintiff waived the right to object to the testimony of McCoy as to those matters concerning which he was examined as upon cross-examination.

The commissioner's report, including the depositions of C. F. McCoy, was filed in the clerk's office on the 27th day of July, 1928. The record discloses that exceptions were filed by C. F. McCoy to certain depositions taken in behalf of the plaintiff on the ground they were not attested or certified by any officer authorized to take depositions, but no exceptions were filed to the depositions of C. F. McCoy. In order to avail themselves of subsec. 2 of section 606, it was required of J. M. Ferguson and Vadna Ferguson to file written exceptions, in the trial court, to his testimony, and to follow up their exceptions by having the court to pass upon the same. Having failed to file written exceptions to his testimony, their right to do so must now be regarded as waived. Black v. Noel's Adm'x, 240 Ky. 209, 41 S. W. (2d) 1100. It appears that the special commissioner and the circuit court treated the testimony of C. F. McCoy as incompetent, and disregarded it. This was improper, in the absence of written exceptions filed in the circuit court as provided by the Code, as it was construed in the case supra. Section 3858, Ky. Stats., expressly provides that a settlement of the county court when accompanied by proper vouchers shall be prima facie evidence in an action to surcharge the same. Therefore the burden of proof was on those attacking his settlements to entitle them to have same surcharged as to any item attacked in the pleading of the contesting party. Wooldridge v. Watkins, 3 Bibb, 349; Farmers' Bank v. American S. Co., 205 Ky. 177, 265 S. W. 505. The testimony of C. F. McCoy and others in his behalf discloses many items by which he should be credited. No report thereon of the commissioner was made. We are not inclined to ransack the record to ascertain these items. Since the case must be reversed on other grounds, the court may refer

the cause to the master commissioner for this purpose and allow proper credits therefor, including the commissions of the guardian for his services. A cross-appeal has been prayed and granted Vadna Ferguson. On a review of the credit allowed by the judgment of $1,044.73 as costs in the United States District Court, we find no evidence sufficient to support it.

For the reasons indicated the judgment is reversed on the original and also on the cross appeal of Vadna Ferguson, with directions to ascertain the credits and the amounts thereof to which the guardian is entitled as we have indicated and for proceedings consistent with this opinion.