## Morris v. Brady et al.

(Decided Feb. 22, 1938.)

CHAS. N. HOBSON for appellant.

MARION RIDER for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

Inez Brady Morris, formerly Inez Brady, is appealing from a judgment of the Franklin circuit court approving and confirming a final settlement of the accounts of Allen R. Brady, her guardian, on hearing of her exceptions to a settlement made by him. The credits allowed the guardian which are called in question are allowances for maintenance of the ward of $3 per week, or $156 a year, for the years 1919 to 1922, inclusive, and for 20 weeks of the year, 1923, amounting to $60.

The principal ground relied on for reversal is that the guardian had been awarded the custody of his ward by the Franklin circuit court under a promise to make no charge for her board; that he was bound by such promise and not entitled to charge or receive anything therefor.

As gathered from the pleading and proof, Win-

fred Brady died intestate in November, 1912, survived by a widow, Cora Brady, and two children, Inez, who was then three years of age and a son, Winfred Brady, two years of age. His estate consisted only of a life insurance policy of $1,000, the proceeds of which were paid to Allen R. Brady, a brother of deceased, as guardian for the two children. Within a few years Winfred Brady died and all that remained of his estate was paid to his mother as his only heir at law. In 1919 Inez Brady inherited from her grandmother something over $350, which also went into the hands of her guardian. For some time following his appointment and qualification the guardian permitted their mother and grandmother, Mrs. Emma Collins, to have the custody of the children, but paid $5 per week toward their support. In 1914 Cora Brady, who was traveling with and playing a piano for some kind of show, returned to Kentucky and took Inez Brady away with her. The guardian later located the child in some foreign state and employed an attorney to get her and bring her back to Kentucky, which was done, and she was delivered to the guardian. Shortly thereafter Mrs. Collins, the grandmother, filed a petition in the Franklin circuit court seeking to adopt Inez Brady and filed with her petition the written consent of the mother of the child to such adoption. The guardian resisted the adoption, setting forth by way of affidavit his grounds of objection. The cause was heard in September, 1915, before Judge R. L. Stout on affidavits and oral proof, and the court declined to award the custody of the child to Mrs. Collins and adjudged that her petition be dismissed. Following that part of the judgment dismissing the petition, it is recited:

"It appears further from the record in this action that the father of said Inez Roberta Brady is dead, and it also appears that Allen R. Brady is the guardian of said infant by appointment of the Franklin county court, and by reason thereof has the legal custody of his said ward. But it is ordered that Emma G. Collins, the grandmother shall be permitted to visit her at the residence of said guardian and the said ward shall be permitted to visit the grandmother within the jurisdiction of this court as often as may be reasonable and consistent with the proper care and treatment of said child."

It is represented in exceptions filed by appellant that in the adoption proceeding the guardian promised the circuit judge not to make any charge for board and maintenance for the ward. At the hearing in the adoption proceedings only Mrs. Collins and her attorney, the Honorable Elwood Hamilton, now judge of the United States court for the Western District of Kentucky, and the guardian and his attorney, the Honorable James Polsgrove, were present. Judge Hamilton's deposition was taken, and he stated in substance that his recollection as to what occurred at the adoption hearing twenty years before was somewhat clouded, but as he remembered, Allen Brady, the guardian, testified that he would make no charge for taking care of the child, and this influenced Judge Stout's decision. Mrs. Collins was positive in her statement that the guardian promised that if he were given care and custody of the child he would support and educate her without charge. Judge Polsgrove, testifying as to what occurred, said that his recollection was very indistinct, but he had a vague impression in some way that the guardian would make no charge; although he could not recall anything that the guardian or the judge said about it.

In his affidavit or answer filed in the proceeding the guardian stated that he did not desire to adopt the child but woud do so in the event the court should conclude that it was to its best interest, and further stated:

"* * * Said child has a small amount of money, in his hands as her guardian, and it is his purpose and intention not to use said money for the payment of board for said child, but to preserve same for some future use, when the necessity for the use of it may arise."

He testified, in substance, that he stated at the hearing before Judge Stout, as he did in his affidavit filed therein, that the grandmother was unable financially to care for the child without use of the fund in his hands, and that would soon be exhausted; that he was willing to care for and support the child and provide for her education at his own expense after the exhaustion of the small fund which he held as guardian. Argument is made concerning the competency of his evidence as to what he stated before Judge Stout, but that is a matter we need not determine. The case has been very extensively as well as ably briefed by counsel for re-

spective parties with citation of numerous authorities from this and other jurisdictions as fortifying their positions.

At the time of the hearing the guardian who was unmarried owned a home in which he lived with a sister. He had some money in bank and was drawing a salary of something over $80 per month. He kept the ward for 8 or 9 years, and, so far as the record discloses, amply provided for her every necessity. He paid out of his own funds the funeral expenses of the ward's father amounting to approximately $300. He incurred other expenses, including medical care, for which no charge was made against the ward. About 1918 or 1919 the guardian, according to his evidence, met financial reverses and lost all of his property, and it was not until then that he made any charge against his ward for board and maintenance. There is disagreement between counsel for respective parties as to whether the alleged contract, if made, was void, and respectable authority is cited pro and con, but we likewise find it unnecessary to determine that question, since there is ample evidence to sustain the chancellor's conclusion that the contract was in fact not made. It will be noted that Judge Stout merely denied and dismissed Mrs. Collins' petition for adoption. He did not in the judgment, if in fact he could have done so, make or attempt to make any adjudication as to the permanent custody of the child, for he recognized that paramount consideration was to be given to the interest of the ward and not to claim of contending parties. The judgment likewise recognized that the guardian had both the actual and legal custody of the child at the time. The order was careful to provide against the child being taken out of the jurisdiction of the court. If the guardian in fact made a promise not to use any of the ward's funds for her board and maintenance and that had influenced Judge Stout's decision, his solicitation for the welfare of the child certainly would have dictated that he make some reference to that in his judgment. But even if it be granted that the guardian did make the alleged agreement, the changed conditions and circumstances of the guardian as testified to by him would have been ample justification for an order of the court authorizing the expenditures of the ward's estate, if necessary for her comfort and support. This and the

contention that the expenditures complained of were unwarranted because in excess of the income from the estate is definitely determined in McCoy et al. v. Ferguson et al., 249 Ky. 334, 60 S. W. (2d) 931, 934, 90 A. L. R. 891, wherein it is said:

> "Ordinarily a guardian may not exceed the income of the ward's personal estate, and it is better always to consult the chancellor before making expenditures out of the principal of the personal estate, but if the expenditures are for such necessaries as the court would authorize to be incurred, if application is made therefor in advance of the payment the fact that application was not made in advance does not deprive the guardian of credit therefor if the payment thereof would have been approved by the chancellor in advance of the incurring of such expenses."

The chancellor adopted that view of this case and concluded that since, in the proven circumstances, a chancellor would have authorized the expenditures, the guardian should not be denied credit merely because such application was not made. Since the chancellor's finding is amply sustained by the evidence and the established facts and circumstances, we conclude that it should not be disturbed.

Judgment affirmed.