GEORGE R. GRANT, Executor of REBECCA KENNEDY, Deceased, Petitioner, v. SARAH KENNEDY BANKS, WYLANTA McKAY BUCKNER, DAVID E. BUCKNER, JR., JOHN HERBERT BUCKNER, RUTH BRISTOW, JOHN SAMUEL BANKS, REBECCA DIXON BUNDY. ELIZABETH W. LUNDY, HAZEL WIDDIFIELD WELLS, MARGARET W. RITTER, JEANETTE PALESE, SAM WIDDIFIELD, JR., INEZ W. BLAKELEY, FRANCES W. MATTHEWS, WILLIAM WIDDIFIELD, N. DOUGLAS MATTHEWS, DOROTHY LOUISE MATTHEWS LANGLEY, CHARLES THOMAS MATTHEWS, Minor; JANET AYERS, Minor; REBECCA AYERS, Minor; TRUSTEES OF THE METHODIST HOME FOR CHILDREN, INC., and HOME FEDERAL SAVINGS & LOAN ASSOCIATION OF FAYETTEVILLE, a Corporation, Respondents.

(Filed 20 June, 1967.)

1. Wills § 66—

Where, subsequent to the execution of a will devising · described real estate to a named beneficiary, testatrix becomes incompetent and remains incompetent until her death, and during her incompetency her trustee sells the real estate under order of court for the support of testatrix, the doctrine of ademption does not apply, and the devisee is entitled to the funds traceable to the proceeds of sale to the extent that such funds are not needed to meet debts of the estate or cost of administration. G.S. 33-32.

2. Insane Persons § 4—

The trustee appointed for an incompetent is merely the custodian, manager or conservator of the incompetent's estate, and the legal title to the property remains in the incompetent, and upon sale of the property under order of court the doctrine of equitable conversion will be applied to funds remaining after the death of the incompetent.

3. Appeal and Error § 49—

The judge's findings of fact upon waiver of trial by jury are conclusive when supported by competent evidence.

APPEAL by Respondents William Widdifield, Jeannette Palese, Frances W. Matthews, Sarah Kennedy Banks, Sam Widdifield, Jr., and Inez W. Blakeley from *Clark, S.J.,* June 1965 Regular Civil Session of CUMBERLAND.

Petition brought under the North Carolina Uniform Declaratory Judgment Act, G.S. 1-253 *et seq.,* for construction of a will and for instructions in the administration of the estate of Rebecca Kennedy, deceased.

Deceased executed a will dated 13 November 1951. At that time she owned miscellaneous personal property, including three savings accounts, and two separate tracts of real property, one being her homeplace and the other a lot on which was situate a leased store building. The provisions of Mrs. Kennedy's will are substantially as follows. Items First and Second provide for the disposition of various personal property and certain specific cash legacies. Item Fourth

provides for the prompt sale of her homeplace and bequeathes certain cash legacies. It further provides that after payment of the debts of the estate and cost of administration the residue in the hands of the executor is to be distributed among the children of testatrix's brothers, Sam Widdifield and William Widdifield, or to the children of any deceased child. George R. Grant, petitioner herein, was appointed executor of the estate by Item Fifth. Item Third of the will is as follows:

> "Subject to the right of my estate to the possession, control, rents and profits for two years after the date of my death, I give and devise my storehouse and lot, located on the North side of Hay Street, in the City of Fayetteville, N. C., and known as the J. L. Kennedy store, to the Methodist Orphanage, owned and operated by the North Carolina Conference of the Methodist Church, and now located at Raleigh, North Carolina, in fee simple and absolute, except for the rights of my estate for two years as above set out, said property to be turned over and delivered to said Methodist Orphanage by my executor, hereinafter named, at the expiration of two years after the date of my death. This bequest is made at the suggestion of my beloved husband, J. L. Kennedy, deceased, and I urgently request that said store property not be sold for a period of twenty-five years after my death."

On 6 March 1957, testatrix was struck and seriously injured by a motor vehicle. By judgment rendered 29 May 1957 she was adjudged mentally incompetent and George R. Grant was appointed trustee of her estate. She remained incompetent until her death.

From the date of the accident until her death on 16 November 1964 Mrs. Kennedy required constant medical, nursing and custodial care, first in a hospital and then for the remainder of her life in a nursing home. This care proved extremely costly and caused an appreciable drain on the assets of the estate, requiring the trustee to consume the funds in the three savings accounts mentioned above. Prior to their depletion, however, the trustee filed petition on 20 July 1957 requesting authority from the court to sell the homeplace. In support of this petition, the trustee offered evidence, *inter alia,* that the sale of the house and lot would be in the best interest of the estate, and that it was very unlikely Mrs. Kennedy would ever be able to return home. The petition was granted on 30 July 1957, and her homeplace was sold for a price of $17,500.

On 3 July 1962, the trustee petitioned the court for authority to borrow $10,000 for the continued support of Mrs. Kennedy, using the store building and lot as security. In support of his petition, the

trustee showed the court that the nursing and medical expenses required for the support of Mrs. Kennedy were averaging $12,000 a year, and that the only income to the estate was from the rental of the store, which amounted to $5,440 a year. The petition was allowed by order dated 3 July 1962.

On 24 May 1963, the trustee petitioned the court that he be permitted to sell at public auction the lot and store building situated thereon in order to provide assets for the maintenance of Mrs. Kennedy. "That in support of his petition he sets forth that the incompetent, Rebecca Kennedy, was then 92 years of age and required 24 hour's nursing and other medical care and that her health was deteriorating rapidly. He reiterated the statement of her continuing expenses approximately $12,000 per year and averred that all other assets and cash reserves had been exhausted and that he, as Trustee, had only enough cash to pay said incompetent's expenses 'for another six months or so.' In the petition he further averred that the existing lease on the property expired June 30, 1963, and that it would not be possible to rent or lease the store building to another tenant without the most extensive and expensive repairs and remodeling." Pursuant to order dated 12 September 1963, the property was sold at public sale for the sum of $90,000. The sale was duly approved by the court and the purchase price collected by the trustee.

Mrs. Kennedy died 16 November 1964. Her will was duly probated and George R. Grant appointed executor. There was in the estate at the time six savings accounts and a savings bond, in the names of various respondents, personal property of a negligible value, and cash assets in the amount of between $40,000 and $50,000. Appellees contend that the cash assets were the residue of funds derived from the sale of the lot and store building. The executor filed petition in this case on 17 February 1965, averring, *inter alia,* that taxes, etc., had not been paid and requesting instructions as to the disposition of the assets of the estate, with specific reference to whether the provisions of Items First and Second were to be executed. It was further averred that expenses of the estate, including taxes and funeral expenses, had not been paid.

It appears all parties have been duly served with summons and are properly before the court. N. Douglas Matthews is in the U. S. Navy, but is represented by counsel, and his interests will not be prejudiced by the trial of this case now, during his military service. He and the minors were represented by guardian *ad litem.* Home Federal Savings & Loan Association of Fayetteville was made a party solely in its capacity as a stakeholder. Hearing was held on

stipulated facts, and on 21 December 1966 the trial court entered judgment. The facts found are substantially as set out above, except the trial judge specifically found that the cash assets in the hands of the executor are traceable to and a part of the proceeds of sale of the store building. The judgment instructed the executor as follows: (1) To allow the disposition of personal property included in Item First according to the provisions of that Item; (2) to deliver the savings accounts and bond to the persons in whose name they were issued; (3) that the provisions of Item Third for the operation of the store for two years after testatrix's death has no force and effect and is not to be observed; (4) that the cash in hand from the sale of the store building be first used to pay the debts and costs of administration of the estate, and that no personal property need be sold for this purpose; and (5) that there was no ademption resulting from the sale of the store building, and after making the payments as above ordered, including attorney's fees, the executor should turn over the remaining amount to the Methodist Home for Children, Inc. From the judgment entered, respondents William Widdifield, Jeannette Palese, Frances W. Matthews, Sarah Kennedy Banks, Sam Widdifield, Jr., and Inez W. Blakeley appealed.

*Tally, Tally & Lewis for plaintiff Executor, petitioner.*

*John B. Regan, Nance, Barrington, Collier & Singleton for appellant respondents.*

BRANCH, J. The first and principal question presented by this appeal is whether there was an ademption of the specific devise of the store building described in Item Third of the last will and testament of Rebecca Kennedy when the property was sold under court order by the trustee during the lifetime of the testatrix, but during her mental and physical incompetency, which incompetency continued until her death.

The principle of ademption is a well recognized legal principle in the law of wills, but its application or even definition often presents difficulty.

> ". . . It is, for example, sometimes said that ademption is the extinction or satisfaction of a legacy by some act of the testator equivalent to its revocation or clearly indicative of an intention to revoke, but ademption of a testamentary gift may occur by destruction or extinction of its subject matter without the agency of the testator, as by the death of a slave or of an animal disposed of by will, and some courts take the view that

ademption is not a matter of the testatorial intention at all."
57 Am. Jur., Wills, § 1580, p. 1081.

The doctrine of ademption by extinguishment does not apply
to general or demonstrative legacies or devises, since neither class
of gift depends upon the existence of any *particular* property in tes-
tator's estate. 57 Am. Jur., § 1582, p. 1082; *Moore v. Langston,* 251
N.C. 439, 111 S.E. 2d 627.

The history of this Court's decisions reflects the difficulties of ap-
plication of this principle and reveals conflict upon the matter of
whether ademption by extinguishment or alienation depends upon
the intention of the testator or simply operates as a matter of law,
depending entirely on whether the specific property given by the
testator remains *in specie* in the estate at the time of testator's
death.

In *Anthony v. Smith,* 45 N.C. 188, testator executed a will, be-
queathing to his debtor the bond which constituted the debt. There-
after, the testator caused the debtor to renew the bond for the con-
venience of other creditors, adding the amount of accrued interest
to the principal on the renewed note. After testator's death, the
debtor brought action against the executor to recover the renewed
bond, contending this was the same bond bequeathed to him. On ap-
peal from the sustaining of a demurrer, this Court overruled the de-
murrer, holding that no ademption resulted from the renewing of the
note. The Court stated:

"(W)hen the thing bequeathed is annihilated and gone at
the death of the testator, or so completely changed at that time
that it cannot be identified, then the legacy must fail; but if it
remains *substantially* the same as it was at the time when the
will was made, then the legacy is not adeemed: . . . The be-
quest of the defendant's testator to his brother the plaintiff, was
in effect the whole debt, including the interest, which the plain-
tiff owed him. It does not merely describe the note by which the
debt was secured, but it proceeds to declare: 'and I do hereby
release him and his heirs from all obligation to me as appears
by said note, and all interest accruing on said note.' Could any
language have been used to express more clearly and fully that
the testator intended to forgive his brother the debt which he
owed him?"

In *Nooe v. Vannoy,* 59 N.C. 185, testator executed a will which
provided in part: "I further give to my children, by a former mar-
riage, the proceeds of the sale of my town property. . . ." There-
after, testator sold the property and reinvested the proceeds in the

bonds or notes of other persons. After his death, plaintiffs brought action to have the legacy declared adeemed. Defendants contended that the proceeds from the sale were traceable and no ademption resulted. The Court, noting the general rule regarding ademption, and that the bequest was to testator's children, stated:

> "As the *proceeds of the sale* is given, it follows that if such a part thereof as is specified, can be traced out and identified, at the time of the death of the testator, the legacy will take effect, and there will be no ademption, or, only a partial one. . . . 'the last class of cases to be noticed as not falling within the general rule of ademption, is where the terms of the bequest are so comprehensive as to include, within their compass, the funds specifically bequeathed, although it has undergone considerable alteration.' "

In *Chambers v. Kerns,* 59 N.C. 280, testator executed a will, devising certain land to one Kerns. Thereafter, testator sold the land to others, giving bond to make title upon payment of the purchase price. Title was not given until after testator's death. On suit to determine distribution of the proceeds from the sale, this Court held an ademption had occurred from the testator's contract to sell and bond to make title. The Court stated:

> "(T)he effect of a contract of sale is to make the vendee the owner of the land, the title being retained by the vendor as a security of the purchase money.
>
> "There are well-settled principles of law, and if by their application the intention of the testator is disappointed, the Court can say it is not the fault of the law, but the neglect of the testator in not adding a codicil to set out his intention, made necessary by the alteration, in the condition of his estate, . . ."

See also *Gillis v. Harris,* 59 N.C. 267.

In *Starbuck v. Starbuck,* 93 N.C. 183, testator executed a will, Item Fourth of which provided: "I will and devise that such portion of the purchase money of my old home plantation which I sold to my son Clarkson as may still be owing me at my death, and any of this money then on hand, shall be equally divided between my said children, (naming them)." Thereafter, by codicil, additional parties were added to Item Fourth. Prior to his death, testator collected the total amount of the purchase price and deposited it in a bank. He thereafter withdrew the money and bought United States bonds. He later sold the bonds and used the proceeds to purchase stock in Wachovia Bank, which stock he owned at his death. On suit insti-

tuted by the executor for instructions, this Court held the legacy provided in Item Fourth had adeemed, and stated:

"Specific legacies are said to be adeemed, when in the lifetime of the testator, the particular thing bequeathed is lost, destroyed, or disposed of, or it is changed in substance or form, so that it does not remain at the time the will goes into effect in specie, to pass to the legatees. If the subject matter of such legacies ceases to belong to the testator, or is so changed as that it cannot be identified as the same subject matter, during his lifetime, then they are adeemed — gone — and never become operative. This is so, because the thing given is gone, and nothing remains in that respect upon which the will can operate. . . .

. . . . .

"There is nothing in the will of the testator that can be construed as indicating any intention on his part that it should take effect at any time before his death. It therefore took effect just as if it had been executed immediately before he died."

However, in *Rue v. Connell*, 148 N.C. 302, 62 S.E. 306, the Court refused to find an ademption, stating:

"There must be an alteration in the character of the subject-matter of a specific legacy made or authorized by the testator himself after making his will, or it will not operate as an ademption. If the change on the form of the property is brought about by the act of another, it will not effect an ademption of the legacy if the property in its new form is in the possession of the testator at his death."

In the *Rue* case testator executed a will which provided, in part: "To my wife, Addie May Connell, during her widowhood, I give, grant and bequeath all and every right, title and interest in and to my Tusculum plantation. . . ." During administration of his estate after death, one Alston brought suit to recover title to this particular property. Alston was successful in his suit, but by the judgment entered was required to pay into testator's estate a certain amount of money representing testator's interest in the property. On suit brought by the devisee of the property, the Court held the devise had not adeemed, and the devisee was entitled to the property in the form of the proceeds.

In *King v. Sellers*, 194 N.C. 533, 140 S.E. 91, Samuel Blossom executed a will which included a devise "to my daughter, Mary King, a mortgage of $4,000 executed by H. H. Hall, trustee, to

Samuel Blossom. . . ." Thereafter, the mortgage, with interest, was paid, and the money deposited in a bank. During the lifetime of testator, $3,500 of this money was loaned to one Peschau upon a note secured by deed of trust upon real estate. After testator's death, Mary King brought suit, claiming the Peschau mortgage under the above quoted Item of testator's will. On appeal, the Court held no ademption had occurred, and awarded the Peschau mortgage to plaintiff, stating:

> "Ademption, in law, denotes the destruction, revocation or cancellation of a legacy in accordance with the *intention of the testator* and results either from express revocation or is implied from acts done by the testator in his lifetime, evincing an intention to revoke or cancel the legacy. (Emphasis ours)
>
> ". . . In applying the test it is well to bear in mind the wise utterance of Pearson, C.J., in *Nooe v. Vannoy*, 59 N.C. 185: 'But it is unusual for a father to adeem, in this manner, legacies given to children and exclude them from his contemplated bounty, when there has been no change of circumstances; and for this reason the Court is slow to adopt the conclusion that it is an ademption and will seek, anxiously, for some mode of explanation.' "

In *Tyer v. Meadows*, 215 N.C. 733, 3 S.E. 2d 264, testator bequeathed two policies of insurance upon his life to his daughter by his first marriage. The will recited that the daughter had been named beneficiary in the policies. Subsequent to the execution of the will, testator changed the beneficiary in the policies to his estate and borrowed money on the policies. The daughter brought suit to recover the proceeds from the policies in the hands of the executrix. On appeal, the Court, looking to testator's intent as evidenced by his will, held that the change in beneficiary to testator's estate did not result in an ademption of the legacy to plaintiff, except for that amount borrowed by testator during his lifetime which was not repaid, and ordered the proceeds from the policies paid to plaintiff.

In *Green v. Green*, 231 N.C. 707, 58 S.E. 2d 722, testator executed a will which contained bequests of certain mortgage notes. Prior to his death, testator foreclosed on many of these notes and bought the property at sale. After testator's death, plaintiffs brought action to have the legacies declared adeemed in order that the property bought by testator would pass intestate to his heirs at law. Sustaining plaintiffs' contention that the specific legacies adeemed, the Court stated:

"The principle of ademption is firmly imbedded in the law of wills, and is recognized in this jurisdiction as applicable to specific legacies as a rule of law rather than of particular intent on the part of the testator. . . . It applies to defeat a bequest where the subject of a specific legacy has been withdrawn, disposed of, or has ceased to exist during the lifetime of the testator."

The cases where the Court has looked to the intent of the testator were not overruled, but were distinguished by *Green v. Green, supra,* on the ground that "those cases and others of similar import illustrate the modification of the rule when the language of the devise is sufficiently comprehensive to prevent the application of the principle of ademption."

Our research reveals that the North Carolina cases on ademption are based on acts of the testator or events happening during the lifetime of the testator while he retained testamentary capacity. Thus, the question presented for decision is apparently one of first impression in this jurisdiction.

The question of ademption by extinction or alienation by act of a trustee or guardian where the ward remains mentally incompetent until death, has been considered by many other jurisdictions, and a sharp conflict as to the rule in such cases exists among various courts.

The English rule holding that where the testator has become mentally incompetent and his guardian or trustee has dealt with his or her property so that it does not remain in specie in the estate of the testator at the time of his death, the bequest or devise is adeemed, is recognized, among others, by New York, Pennsylvania and Vermont. *Hoke v. Herman,* 21 Pa. 301; *In re Barrows' Estate,* 103 Vt. 501, 156 Atl. 408; *Holmes v. Goodworth,* 7 L.J. Ch. 128 (1829 Eng.).

One of the leading cases applying the English rule is *In re Ireland,* 257 N.Y. 155, 177 N.E. 405. There testator owned common and preferred stock in a corporation at the time his son was appointed committee of his estate and person because of testator's incompetency. The committee sold all of the preferred stock and used a part of the proceeds for the care of testator until his death. Holding that a specific bequest of the preferred stock was adeemed, and that the incompetency of the testator — such that testator could exercise no intention in the matter — was immaterial, the Court stated:

"The rule as it existed at common law, and still exists, admits of no such exception. The property constituting the specific legacy had been sold; it had ceased to exist. The exact

thing which was given by the will could not physically be passed on to the legatee. From the very nature of the case and of the gift the legacy became extinct. In the absence of statute there is no power in the courts to change a specific into a general legacy or turn over the balance of the proceeds derived from the sale of the specific property to the legatee in place of the particular thing intended to be given. Out of the moneys received from the sale of the preferred shares by the committee there was left a balance over and above expenditures for the incompetent of $1,848.40, which was turned over to the executor as part of the estate. To give this to Lena M. Whitmore in place of the preferred shares might seem equitable, but it is not in accordance with the directions or will of the testator. He gave her the preferred shares of stock, not the proceeds thereof, and according to all the decisions, when the specific thing given ceases to exist the legacy falls; it cannot be made up out of other property in the estate."

The Scottish rule, or the rule of necessity, holds that a conversion of the subject matter of a specific legacy by the guardian or trustee of an insane testator does not adeem the legacy unless it can be shown not only that it was a proper and necessary act on the part of the trustee or guardian, but that it would have been a necessary and unavoidable act on the part of the testator if *sui juris*. *Macfarlane v. Macfarlane*, 47 Scot. L.R. 266, 1 Scots. L. T. 40. Closely allied to the Scottish rule is the view taken by Illinois, Missouri, New Jersey, and other jurisdictions, that the relationship between the trustee or guardian and the incompetent testator is a trust relation, the estate is a trust fund for support of himself and his family, and the original character of the estate may be interfered with only to the extent necessary to provide support for them and pay debts thus incurred, including cost of administration.

In the case of *Lewis v. Hill,* 387 Ill. 542, 56 N.E. 2d 619, real estate was specifically devised by an incompetent testatrix and thereafter was sold by her conservator under order of court for the purpose of providing funds for incompetent's support, and the testatrix died a short time later, leaving unexpended funds from the sale in the hands of the executor which were not needed to meet any debts or costs of administration. The Court held that no ademption of the devise resulted, and that the devisee was entitled to receive the remaining fund, which under the circumstances must be regarded as a substitute for the land from which it was derived, and which would pass under the will to the person to whom the land had been devised. The Court considered that the conveyance made by the

conservator was in no sense to be regarded as a conveyance by the incompetent, and that the conversion of the real estate into personalty was for the particular purpose ordered by the court. See also *National Board of C. W. B. M. v. Fry*, 293 Mo. 399, 239 S.W. 519; *Re Cooper*, 95 N.J. Eq. 210, 123 Atl. 45.

Reaching results similar to the trust fund theory, other jurisdictions such as Michigan and Virginia rely on the theory of equitable conversion. In the case of *Bryson v. Turnbull*, 194 Va. 528, testatrix became mentally incompetent and remained under guardianship until her death. During the guardianship the guardian received proceeds from the sale of timber, from a condemnation suit filed by the United States Government, and from a partition proceeding, all under order of court. The Virginia court referred to a number of statutes demonstrating that it was the legislative intent that the character of an incompetent's land not be changed except to the extent required, and that the proceeds received be impressed with the character of the land. While the Virginia case does not deal strictly with the subject of ademption, it applies the doctrine of equitable conversion and considers the guardian of an incompetent merely a custodian and conservator of the estate, without power to change the descent or distribution of incompetent's property.

Looking to our own statutes, we find that G.S. 33-32 provides:

> "Whenever, in consequence of any sale under § 33-31, the real or personal property of the ward is saved from demands to which in the first instance it may be liable, the final decree shall declare and set apart a portion of the personal or real estate thus saved, of value equal to the real and personal estate sold, as property exchanged for that sold; and in all sales by guardians whereby real is substituted by personal, or personal by real property, the beneficial interest in the property acquired shall be enjoyed, alienated, devised or bequeathed, and shall descend and be distributed, as by law the property sold might and would have been had it not been sold, until it be reconverted from the character thus impressed upon it by some act of the owner and restored to its character proper."

In construing G.S. 33-32, this Court in *Brown v. Cowper*, 247 N.C. 1, ·100 S.E. 2d 305, speaking through Parker, J. (now C.J.), stated:

> "The general rule is that, where the real estate of a lunatic is sold under a statute, or by order of court, the proceeds of sale remain realty for the purpose of devolution on his death intestate while still a lunatic. Anno. 90 A.L.R., p. 909 *et seq.*,

where the cases are assembled; Anno. Ann. Cas. 1915A, p. 158 *et seq.;* 18 C.J.S., Conversion, p. 75; 19 Am. Jur., Equitable Conversions, Sec. 23; Tiffany on Real Property, 3rd Ed., Sec. 306; Story's Equity Jurisprudence, 14th Ed., Sec. 1101, Pomeroy's Equity Jurisprudence, 5th Ed., Sec. 1167. See *Black v. Justice,* 86 N.C. 504, marginal p. 512; *Bryson v. Turnbull,* 194 Va. 528, 74 S.E. 2d 180; *McCoy v. Ferguson,* 249 Ky. 334, 60 S.W. 2d 931, 90 A.L.R. 891. The equitable doctrine is that upon the involuntary sale by a guardian, under a judicial decree, of the land of an insane person, incapable by reason of his insanity of intelligent assent and of dealing with his real estate, the proceeds of sale should be impressed with the character of the land sold, and should pass as such at his death if the disability of insanity has not been removed. The object of the rule is to prevent, as far as possible, any alteration by the guardian of a lunatic of the respective rights of the heirs of such lunatic in his real property should he die still a lunatic. See 89 Am. St. Rep., note pp. 313-314."

Although this case applies to an intestate, we see no reason why, upon the statute and the principles enunciated above, this rule should not apply to an incompetent testator.

American Law on Property, Vol. 3, Sec. 14.13, p. 608, states:

"There is one type of situation wherein most of the decisions adhere to the intention theory — that in which the testator becomes insane and the specifically devised property is sold in his lifetime by his guardian or committee. These decisions award the remaining proceeds of the specific property to the devisee. A sympathetic argument can be made for this result, because the insane testator has no opportunity to make a substitute devise by a later will."

Also, in Wiggins: Wills and Administration of Estates in North Carolina, § 143, p. 463, we find the following:

"A majority of courts do not apply the principle of ademption by extinction when the testator becomes incompetent and the subject matter of a specific bequest or devise is sold by a guardian. The general rule is adopted by statute in New York. The rule is based upon the theory that an incompetent testator does not have an opportunity to make a new will after the guardian disposes of the property, and the law presumes that the testator would have desired that the legacy remain in effect."

In the instant case we hold the sale of the property of Rebecca Kennedy by the trustee under order of court did not by operation of law cause an ademption of the specific devise of the lot and store building as set out in Item Third of her will. To the extent that the proceeds of such property remain in and are traceable into the estate at her death, without having been applied to the support or expenses of the said Rebecca Kennedy, and are not needed to meet debts or costs of the administration, the proceeds will be regarded as retaining the character of realty so that the specific devise in Item Third will not be adeemed.

G.S. 33-1 in part provides:

> "Provided, further, where any adult person is declared incompetent in connection with his commitment to a mental hospital or is found to be incompetent from want of understanding to manage his affairs by reason of physical and mental weakness on account of old age, disease, or other like infirmities, the clerk may appoint a trustee in lieu of a guardian for said persons. The trustee so appointed shall be subject to the laws now or which hereafter may be enacted for the control and handling of estates by guardians."

Trustee and ward is a trust relation in which the trustee acts for the ward, whom the law regards as incapable of managing his own affairs. The legal title to the property is in the ward, the trustee being merely the custodian, manager, or conservator of the ward's estate. *Owen v. Hines,* 227 N.C. 236, 41 S.E. 2d 739. In his limited capacity as custodian or conservator, the trustee has no power to change the will of his ward by merely commingling assets in his hands. To so hold would reach the preposterous result of allowing a guardian or trustee to rewrite and alter the provisions of a will so as to destroy the testamentary intent of the testator by merely commingling funds.

Jury trial having been waived, the judge's finding of fact that the funds in the estate "were traceable to a part of the proceeds of the sale of said Hay Street store building," being supported by competent evidence, is as conclusive as the verdict of a jury. *Trust Co. v. Bank,* 255 N.C. 205, 120 S.E. 2d 830.

Affirmed.